STATE EX REL. Clifford BROOKS, Plaintiff-Respondent,

v.

HARTLAND SPORTSMAN'S CLUB, INC., Defendant-Third
Party Plaintiff-Appellant,†

v.

TOWN OF DELAFIELD, Third Party Defendant-
Respondent.

Clifford BROOKS, Plaintiff-Respondent,

v.

TOWN OF DELAFIELD, Intervening-Plaintiff-Respondent,

v.

Robert SCHANEN, Thomas Worthington, John Jorgen-
son, Anne Wallis and Hartland Sportsman's Club,
Inc., Defendants-Appellants.†

Court of Appeals

*No. 94–0768. Submitted on briefs February 3, 1995.—Decided
March 15, 1995.*

(Also reported in 531 N.W.2d 445.)

†Petition to review denied.

On behalf of the defendant-third party plaintiff-appellant and defendants-appellants Hartland Sportsman's Club, Inc., the cause was submitted on the brief of *Mark M. Camp* of *Pfannerstill, Camp and Kreul* of Wauwatosa.

On behalf of the third party defendant-respondent and intervening-plaintiff-respondent Town of Delafield, the cause was submitted on the brief of *Michael J. Cieslewicz* of *Kasdorf, Lewis & Swietlik, S.C.,* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. Hartland Sportsman's Club, Inc. contends that its club operations are not subject to a conditional use permit issued in 1968 and later modified in 1992 by the Town of Delafield. The club argues that it has a vested interest in a legal nonconforming use which the Town could not alter and that, even if its use is not a legal nonconforming use, under the applicable statutory provisions in 1968, the Town's issuance of the conditional use permit was invalid. We hold that the club does not have a legal nonconforming use and, on the basis of invited error, the club has waived its invalidity argument which is made at least twenty-three years after the fact. Thus, we affirm the trial

court's grant of partial summary judgment to the Town.

The following facts are undisputed. In 1955, the club received approval from the town board of the Town of Delafield to construct rifle, shotgun and pistol ranges on property it proposed purchasing. The club then purchased its property. At the time of approval and purchase, a 1939 town zoning code was in effect and classified the club property as residential. The ordinance excluded the use of residential property for "the conduct of any retail or wholesale business or manufacture." TOWN OF DELAFIELD, WIS., ZONING ORDINANCE, § 3 (1939).

The club property was surrounded by vacant land with a private garage and a waste material landfill and farmland on the remaining sides. In 1957, club members again appeared before the town board, and the Town gave its approval to the club to operate the rifle and pistol shooting ranges.

In 1960, the Town repealed the 1939 ordinance and enacted a new zoning ordinance, which gave the club property an "A-2 Rural Home District" zoning classification. *See* TOWN OF DELAFIELD, WIS., ZONING ORDINANCE § 7 (1960). The ordinance permitted conditional uses, including "private clubs and outdoor recreational facilities," *id.* at § 3.08(4)(J), and provided that such uses are subject to Town approval after a public hearing, *id.* at § 3.04(4).

At a meeting in 1964, the town board set forth in writing the following restrictions on the club's use of its premises, "previously agreed upon [and] in effect for many years with the Hartland Sportsman's Club, Inc.":

1. Normal shooting hours shall be between the hours of 9:00 A.M. to 8:00 P.M. daily (through daylight hours).

2. The Sportsman's Club shall be allowed one night per week of shooting time beyond the 8:00 P.M. stop[ping] hour, but in no case is shooting to continue beyond 10:30 P.M. This special day is hereby designated as Tuesday.

3. The designated special day for extended shooting hours may be changed to any day except Sunday upon application by the Sportsman's Club [and] written agreement of the Town Board.

4. Up to 6 occasions per year are granted to the Sportsman's Club by the Town Board for special events when shooting hours can be started at [8:00] A.M. Notification in writing shall be given to the Town Board prior to such events.

The record does not show the nature of this 1964 meeting nor the club's involvement, if any, in the drafting of this agreement. In the margin is a handwritten notation reading "Proposal."

In 1968, the club applied to the Town for a building permit to construct an indoor "small bore range." As a precondition for the building permit, the Town required the club to submit an application for a conditional use permit. Without objection, the club applied for conditional use status pursuant to § 3.08(4)(J) of the town ordinances, designating "Private Clubs and Outdoor Recreational Facilities" as conditional uses. In a "rider" to the application, the club stated that "[s]hooting times allowed by the Town through mutual agreement have been: daily from 9:00 A.M. until dark (can begin at 8:00 A.M. upon receipt of special written permission from the Town Board), and on Tuesday evenings until 10:30 P.M." The club requested that

"permission be granted to the club to conduct additional shoots on Thursday evenings, if . . . the additional evening shoot will not create a hardship on residents of the Town."

The Town issued a conditional use permit which continued the restrictions set forth in 1964 and reiterated terms requested in the club's application for conditional use status, excepting the request to extend its hours on Thursdays. The permit also set the number of traps according to the plot plan submitted by the club and limited the membership to two hundred. The permit also provided that the town board retain the authority to review and alter the conditions of the permit as follows:

> The Town Board retains the authority, upon written notice to applicant, its successors or assigns, to review the conditions of this permit whenever it has reasonable cause to believe that any of the conditions herein imposed are being violated. Upon hearing, after due notice given to applicant, the Board reserves the jurisdiction to alter or change the conditions of this permit if reasonable cause for doing so is shown.

Upon learning the conditions of the permit, the club "withdrew" its application for a building permit.

In the late 1970s and early 1980s there was some residential development south of the club premises, and, at the same time, the public's use of club premises increased. In 1973, the club purchased an additional five acres of land without requesting or receiving approval from the Town. In the late 1980s, the club added sporting clays to its facilities, thereby increasing the number of users of the facility. The popularity of

sporting clays brought an "influx of new shooters each week to the open shooting programs."

Area residents began petitioning the Town to place restrictions on the use of club facilities because of noise. In 1986, at the Town's request, the club erected a sound insulated shed at the pistol range and planted trees and foliage to reduce the sound of firearms.

The Town continued to receive complaints from area residents regarding the noise of the club's operations. In 1991, a public hearing was held regarding the matter, with club members in attendance. Then, in 1992, the town board met and, after conducting an evidentiary meeting, concluded that the club had violated terms of its 1968 conditional use permit. The town board then approved a modified conditional use permit which, among other things, further restricted the club's hours of operation:

2. HOURS OF OPERATION—OUTDOOR SHOOTING.

a. Unless prior written approval is given by the Town Board for special activities, there shall be no outdoor shooting on Sunday, Wednesday, and Friday. There shall be no outdoor shooting on Thanksgiving Day and Christmas Day.

b. Shooting hours for Monday and Thursday shall be between 10 a.m. and 6 p.m.

c. Shooting hours for Tuesday shall be between 10 a.m. and 8 p.m.

d. Shooting hours for Saturday shall be between 9 a.m. and 1 p.m.

. . .

3. INDOOR SHOOTING.

a. No indoor shooting shall be allowed without approval of the Town Board after public hearing.

The modified permit further provided that the club could seek approval from the town board for activities not within the above time frames or other conditions.

Clifford Brooks, an area resident, commenced a 1991 action for a temporary injunction to compel the club to comply with the 1968 conditional use permit and then commenced a 1992 action to compel the club's compliance with the 1992 permit. The two actions were consolidated, and the Town intervened as a party plaintiff. The trial court granted the Town's motion for a temporary injunction.

The Town and Brooks filed motions for partial summary judgment asking that the club be permanently enjoined from violating the conditional use permit. The club also filed a motion for summary judgment to dismiss the complaints of Brooks and the Town, claiming that Brooks lacked standing and that the conditional use permit was invalid. The trial court denied the club's motion, determining that Brooks had standing and that the 1968 and 1992 conditional use permits were valid. Consequently, the trial court granted summary judgment to the Town and Brooks.[1]

[1] Meanwhile, the club commenced an action in the United States District Court, Eastern District of Wisconsin, seeking relief under 42 U.S.C. §§ 1983, 1985 and 1988 against the Town and various members of the Town's board of supervisors, alleging that enforcement of the conditional use permit violated the club's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and seeking a preliminary injunction preventing enforcement of the permit. The federal court denied the club's motion for a preliminary injunction and granted the Town's motion for summary judgment seeking dismissal of the club's 1983 and 1985 claims. After a trial to the court on the club's Fourteenth Amendment due process claim, the club's action was dismissed in its entirety with prejudice. The club appealed only the due process claim to

We first consider the question of whether the club has a legal nonconforming use. This determination involves the application of the facts to a legal standard and, consequently, presents a question of law which we review de novo. *See Waukesha County v. Seitz*, 140 Wis. 2d 111, 116, 409 N.W.2d 403, 405-06 (Ct. App. 1987).

The club argues that its operations were permitted under the 1939 zoning and thus "qualified as a nonconforming use when the December 13, 1960, zoning ordinance was enacted rezoning the Hartland Club premises." At the outset, we disagree with the club's premise that its use was permitted under the 1939 zoning. Under the 1939 ordinance, the club's property was zoned "residential" and its use as a business operation was prohibited in residential districts.[2] However,

---

the United States Court of Appeals, which in turn affirmed the district court. *See Hartland Sportsman's Club, Inc. v. Town of Delafield*, 35 F.3d 1198, 1199, 1203 (7th Cir. 1994). The Court of Appeals held that the Town lacked statutory authority to issue the 1968 permit, but also held that this violation of state law was insufficient by itself to support a substantive due process claim. *Id.* at 1202. Because there is a final judgment on the club's substantive and procedural due process claims raised here, we hold that res judicata bars our review of these claims. *See Great Lakes Trucking Co. v. Black*, 165 Wis. 2d 162, 168-69, 477 N.W.2d 65, 67 (Ct. App. 1991).

[2] Because of the incomplete record of the 1955 and 1957 proceedings, we cannot reach a conclusion about the precise nature of the use granted in the 1950s to the club. The granted use appears to meet some of the requirements set forth in the definition of a variance. "A variance is an authorization . . . for the establishment or maintenance of a use of land, which is prohibited by a zoning ordinance." 3 ROBERT M. ANDERSON, AMER-

even if the 1939 zoning permitted the club's operations, we do not agree that the 1960 zoning made its use *nonconforming*. A legal nonconforming use is "a use of land for a purpose *not permitted*" under the zoning ordinance but which was an active and actual use existing prior to the commencement of the zoning ordinance. *Seitz*, 140 Wis. 2d at 114-15, 409 N.W.2d at 405 (emphasis added). A conditional use is one which the zoning code allows. *Delta Biological Resources, Inc. v. Board of Zoning Appeals*, 160 Wis. 2d 905, 910, 467 N.W.2d 164, 166 (Ct. App. 1991). We conclude, and the club concedes, that the 1960 zoning permitted its use under § 3.08(4)(J) permitting private clubs and outdoor recreational facilities as conditional uses. *See* TOWN OF DELAFIELD, WIS., ZONING ORDINANCE, § 3.08(4)(J) (1960). Thus, the club operation was not a legal nonconforming use under the town ordinance, but was permitted as a conditional use.

■

The next issue is whether the Town's issuance of the 1968 permit was proper. The club argues that under § 62.23(7)(e), STATS., 1967, and *State ex rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 207 N.W.2d 585 (1973), the town board did not have

ICAN LAW OF ZONING § 20.02 (3d ed. 1986). However, the granting of a variance must be based on unnecessary hardship. *See* § 62.23(7)(e)7, STATS., 1955; *Arndorfer v. Sauk County Bd. of Adjustment*, 162 Wis. 2d 246, 253, 469 N.W.2d 831, 833 (1991). The reason for this requirement is that otherwise "a board of review would have the power to nullify the zoning ordinance under the guise of exceptions or variances." *Arndorfer*, 162 Wis. 2d at 254, 469 N.W.2d at 834 (quoted source omitted). Here, the record does not show that the club's use of its property was granted on the basis of "unnecessary hardship." Thus, we cannot conclude that the club had a variance.

authority to issue conditional use permits. We agree with the club's argument as far as it goes. This earlier version of § 62.23(7)(e)1 provided that "[t]he council which enacts zoning regulations pursuant to this section shall by ordinance provide for the appointment of a board of appeals, and shall provide in such regulations that said board of appeals may, in appropriate cases ... make special exceptions to the terms of the ordinance in harmony with its general purpose . . .." In *Skelly*, our supreme court construed that section[3] to vest exclusive authority in the board of zoning appeals to pass upon conditional uses.[4] *Skelly*, 58 Wis. 2d at 703, 207 N.W.2d at 588. Thus, we hold that the Town did not have authority in 1968 to issue conditional use permits.

Nonetheless, we cannot conclude that the 1968 conditional use permit is void. The record shows that the club's use, apparently from the beginning, was subject to certain conditions agreed and acted upon

---

[3] The legislature later in 1973, apparently in response to the supreme court's decision in *State ex rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 207 N.W.2d 585 (1973), amended § 62.23(7)(e), STATS., with the following addition: "Nothing in this subdivision shall preclude the granting of special exceptions by the city plan commission or the common council in accordance with the zoning regulations adopted pursuant to this section which were in effect on July 7, 1973 or adopted after that date." *See* Laws of 1973, ch. 60, § 3. Subsequently, we construed this section to allow "a municipality to authorize, by ordinance, a town board the exclusive power to consider applications for special exception permits." *Town of Hudson v. Hudson Town Bd. of Adjustment*, 158 Wis. 2d 263, 273, 461 N.W.2d 827, 830 (Ct. App. 1990).

[4] The terms "conditional uses" and "special exceptions" are used interchangeably here. *See Skelly*, 58 Wis. 2d at 703, 207 N.W.2d at 588.

between the parties under what the trial court referred to as an "informal conditional use permit." In 1964, the Town set forth in writing the agreement that the club would operate during certain hours and would seek permission from the Town to operate outside those hours. Further evidence in the record of this agreement is a letter written by a club member in 1964 requesting permission to "start firing at 8:00 A.M. on the Rifle Range [for four dates in July 1964]" and the Town's return letter granting the permission. Moreover, in the club's 1968 application for a conditional use permit, it conceded the terms of this earlier agreement, including the times of operation, the limitation on the number of traps and other shooting facilities, and the need for Town approval before the club may exceed the agreed upon terms. Further, at a motion hearing before the trial court in this case, the club's counsel acknowledged the long-standing informal agreement between it and the Town.

Consequently, any vested interest held by the club was based on certain agreed upon conditions and restrictions. Thus, when the club applied to the Town for a conditional use permit, it did so in order to expand its use beyond the terms of the pre-1968 agreement—to construct an indoor "small bore range." Even though the town board was not the proper authority to issue such permits in 1968, it does not necessarily follow that because the club submitted to the improper authority that it was entitled to operate without a conditional use permit. The club applied for a conditional use permit and that is exactly what it got.[5] The record does not show that the club ever appealed the town board deci-

[5] The town ordinance at the time designated the planning commission subject to approval by the town board as the proper

sion regarding the terms or issuance of the permit. In fact, the record shows that the club acquiesced to many terms of the permit. For instance, in 1977, the club sought and secured Town approval for "improvements and modifications of the existing rifle range." It was not until 1991 when this cause of action was brought against the club that it formally raised any objections to the issuance or the terms of the conditional use permit. Thus, we hold that the club's actions invited error, *see Zindell v. Central Mut. Ins. Co.*, 222 Wis. 575, 582, 269 N.W. 327, 330 (1936), and it thereby waived any right to now, many years after the fact, assert as a defense the invalidity of the conditional use permit, *see Jefferson County v. Timmel*, 261 Wis. 39, 64, 51 N.W.2d 518, 530-31 (1952).

■

Therefore, the remaining question is whether the imposition of the 1992 conditional use permit was a proper exercise of the Town's police power. We hold that it was. The 1968 permit authorized the Town to

authority for the granting of conditional use permits. The ordinance states:

> The term "Conditional Use" is felt to be more accurately descriptive than "Special Exception" for those uses which are permitted literally "subject to certain conditions." As such a grant is in effect an extension of the original planning-legislative determination, the Planning Commission is designated as the proper determining body in such case, subject in certain instances to final approval by the governing body itself. The Board of Appeals thereby remains strictly a quasi-judiciary "appeal" or "adjustment" body and its function does not become confused with the planning-legislative function.

TOWN OF DELAFIELD, WIS., ZONING ORDINANCE Preface (1960). However, as we stated earlier, under *Skelly*, the town board was not the proper authority in 1968 to issue such permits. *See Skelly*, 58 Wis. 2d at 703, 207 N.W.2d at 588.

modify the permit "whenever it has reasonable cause to believe that any of the conditions herein imposed are being violated." Even though the club acquiesced to many terms of the permit, the record also shows that it violated both the pre-1968 agreement and the 1968 permit by expanding club operations with the addition of sporting clays—a change which increased the intensity of the use of its facilities and the area in which it operated. It was this expansion, along with violations of time and day restrictions, which prompted the Town's modification of the 1968 permit.

The statutory authority for the Town's police power can be found in § 62.23(7), STATS., which grants zoning power to cities and villages "[f]or the purpose of promoting health, safety, morals or the general welfare of the community."[6] That section and any ordinance enacted under it "shall be liberally construed in favor of the city." *Id.* Pursuant to that statutory authority, the Town enacted its zoning ordinance which states: "Any use, in any district, which becomes hazardous, harmful, noxious, offensive or a nuisance to the surrounding neighborhood may be required to correct or improve such condition by such measures as are directed by the Town Board consistent with reasonable technological and economic practicality." TOWN OF DELAFIELD, WIS., ZONING ORDINANCE § 3.07(4) (1960). Thus, we hold that the imposition of the 1992 permit which seeks to regulate the gun club's operations was a proper exercise of the Town's police powers under these sections.

The club raises another issue which we address briefly. The club contends that Brooks lacks standing under § 182.021, STATS., which provides that no suit

---

[6] This section applies to the Town because it adopted village powers. *See* §§ 60.10(2)(c), 60.22(3), 61.35, 62.23, STATS.

shall be maintained against "[a]ny domestic corporation formed for the purpose of sharpshooting or improving in the use of firearms" to "impede its exercises . . . on complaint of any private individuals or parties, who shall acquire title to any property adversely affected by such exercises after such grounds and range are permanently located." However, we conclude that this issue became irrelevant when the Town intervened as a plaintiff and, therefore, the action could be maintained.

*By the Court.*—Judgment and order affirmed.