**CHRISTY'S REALTY LIMITED PARTNERSHIP**

v.

**TOWN OF KITTERY et al.**

Supreme Judicial Court of Maine.

Argued June 22, 1995.
Decided Aug. 9, 1995.

S. James Levis, Jr. (orally), Levis & Hull, P.A., Biddeford, for plaintiff.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for Town of Kittery.

Erland B. Hardy, Woodman & Edmands, P.A., Biddeford, for Leon Benton.

Before WATHEN, C.J. and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Christy's Realty Limited Partnership appeals and the defendant, Leon Benton, cross appeals [1] from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) affirming the decision of the Town of Kittery Planning Board. Christy's contends that the Board improperly determined the number of parking places required for a drive-thru convenience store proposed by Benton. Benton challenges Christy's standing to appeal. We affirm the judgment.

I.

Leon Benton submitted a site development plan to the Board seeking approval to add a 350 square foot drive-thru convenience store to State Road Plaza in Kittery. The Land Use and Development Code Zoning Ordinance for the Town of Kittery required the Board to review the application pursuant to certain standards and to determine what, if any, parking requirement was established by the Code.[2] The Board reviewed the application and applied the provisions of section 8.11.4.2 of the Code providing for off-street

---

1. The Town of Kittery did not join in this cross appeal.

2. Kittery, Me., Zoning Ordinance, § 9.7.3.1 (August 16, 1993) provides in pertinent part:
    Action by the Board shall be based upon findings of fact which certify or waive compliance with all the required standards of this code, and which certify that the development satisfies the following requirements:

    (e) Traffic. The proposed development will not cause unreasonable highway or public road congestion or unsafe conditions with respect to the use of the highways or public roads existing or proposed. Furthermore, the proposed development will provide adequate traffic circulation, both on-site and off-site[.]

parking requirements. Section 8.11.4.2 provides in pertinent part:

> The following minimum off-street parking and loading requirements shall be provided and maintained in case of new construction, alterations and changes of use.... In cases not specifically covered, the Town board or officer with jurisdiction to approve the application is authorized to determine the parking requirements and projected development use intensity. Existing parking standards shall be used as a guide where applicable to ensure that a sufficient number of parking spaces are provided to accommodate the number and type of vehicles attracted to the development during peak parking demand times.

Among other listed cases, section 8.11.4.2 specifies requirements for "Convenience stores or Neighborhood grocery facilities" (6 spaces in the Rural Residential Zone; all other zones, 10 parking spaces), "Drive-in restaurants, snack bars and fast food outlets" (minimum 15 parking spaces, plus 1 space per three seats), and "Retail Stores and Financial Institutions" (1 parking space for each 175 square feet of gross floor area). A "convenience store or other neighborhood facility" is defined in section 2.2 as follows:

> A retail store containing less than 2,000 square feet of gross floor area that is designed and stocked to sell primarily food, beverages, and other household supplies to customers who purchase only a relatively few items (in contrast to a grocery store). It is designed to attract and depends upon a large volume of stop-and-go traffic. Supplementing these uses with accessory gasoline sales requires additional parking and traffic considerations.

The proposed store would sell staples such as milk, bread, beer, and groceries. Customers would drive up to a glass wall that displays merchandise for sale. Then they would drive to a window to order, pay for, and pick up the merchandise. Customers would not leave their vehicles or be allowed in the store. The queue leading to the order/pick-up window would accommodate ten waiting vehicles. Benton's plan included two additional parking spaces to accommodate store employees. A traffic analysis expert reported that there are no such convenience stores in or near Maine.

At a meeting in April 1994 the Board unanimously granted approval to Benton's plan, which the Board characterized as a "drive-thru store," subject to certain conditions, including that "there shall be no walk-in or walk-up business." The Board specified that it approved Benton's plan "per section 8.11.4.2," reasoning that even though that section does not specifically cover "drive-thru stores," it nonetheless gives authority to the Board to use its discretion to determine the parking requirements utilizing existing parking standards as a guide. One Board member suggested that a bank drive-up window, which requires no additional parking spaces, presented an analogous situation. The Board adopted the approved minutes of the meeting as its findings of fact.

Christy's, an abutter that operates a convenience store, appealed the Board's action pursuant to section 6.1.1 of the Code.[3] The Superior Court found that Christy's had standing but affirmed the Board's decision. This appeal and cross-appeal followed.

## II.

■ We first consider whether Christy's has standing to appeal the Board's action. We have previously explained that "when the person who has appeared before the board is an abutter, as in the case at bar, a reasonable allegation of a potential for particularized injury is all that is necessary to establish the real controversy required for adjudication in a court." *Pearson v. Town of Kennebunk,* 590 A.2d 535, 537 (Me.1991). *See also Forester v. City of Westbrook,* 604 A.2d 31, 32 (Me.1992) ("[T]he proximate location of the abutter's property, together with a relatively minor adverse consequence if the variance

---

**3.** Kittery, Me., Zoning Ordinance, § 6.1.1 (August 16, 1993) provides:

> An aggrieved party may appeal any decision of the Planning Board, under these regulations, to the York County Superior Court, within 45 days of the date of the action taken by the Board, of said decision pursuant to M.R.C.P., Rule 80B.

were granted, . . . sufficiently demonstrates a potential for particularized injury.").

In its complaint, Christy's alleges that "the illegal operation of a competing convenience [store] . . . on the Benton parcel will unfairly cause economic damage to [Christy's]." In its brief, Christy's characterizes this allegation as "a demand that Christy's not be placed in the position of providing the customer parking for both convenience stores." Contrary to Benton's contention, Christy's alleged injury is more than just "increased business competition." Although Benton's drive-thru store would ostensibly prohibit walk-in or walk-up business, there is a potential that this requirement would not be rigorously enforced and that Benton customers would, in fact, use Christy's parking places. Christy's has standing because it made a reasonable allegation of a potential for a particularized injury. *Pearson,* 590 A.2d at 537.

### III.

■■■ When, as here, the Superior Court acts as an intermediate appellate court, we independently examine the record and review the Board's decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *C.N. Brown Co. v. Town of Kennebunk,* 644 A.2d 1050, 1051 (Me.1994). Whether a proposed use falls within a given category contained in a zoning ordinance is a question of law. *Id.* (citing *Hopkinson v. Town of China,* 615 A.2d 1166, 1168 (Me.1992)). The terms or expressions in a zoning ordinance should be construed reasonably with regard both to the objects sought to be obtained and to the general structure of the ordinance as a whole. *Nyczepir v. Town of Naples,* 586 A.2d 1254, 1255–56 (Me.1991). The purpose of the parking standards in section 8.11.4.2 of the Code is "to ensure that a sufficient number of parking spaces are provided to accommodate the number and type of vehicles attracted to the development during peak parking demand times." In contrast to a "convenience store," "fast food outlet," or "retail store," the proposed drive-thru store does not create any peak parking demand. Given the purpose of the parking standards

and given that the critical feature of Benton's proposed use is its drive-thru component, the Board properly determined that the proposed drive-thru store is a case not specifically covered by section 8.11.4.2.

Section 8.11.4.2 expressly provides that "in cases not specifically covered" the Board is authorized to determine the parking requirements. Because the proposed use is a 350 square foot store with only two employees and only drive-thru customers, it was well within the Board's discretion to determine that the store required two parking spaces.

The entry is:

Judgment affirmed.

All concurring.