NORRIS R. DAVIS, Petitioner v. TOWN OF STALLINGS BOARD OF ADJUSTMENT and TOWN OF STALLINGS, Respondents

No. COA99-1513

(Filed 29 December 2000)

**1. Zoning— board of adjustment—review of decision**

The trial court sits in the posture of an appellate court when reviewing the decision of a board of adjustment. De novo review is proper if a petitioner contends the board's decision was based on an error of law, but the whole record test must be applied if a petitioner contends the board's decision was not supported by the evidence or was arbitrary or capricious. The role of the appellate court is to review the trial court's order for errors of law, determining whether the appropriate scope of review was exercised and whether it was exercised properly.

**2. Zoning— de novo standard of review**

The trial court appropriately applied the de novo standard of review to the decision of a board of adjustment where petitioner contended that the board erroneously concluded that his video store was an "adult establishment" based on his refusal to testify. This presents a question of law.

**3. Constitutional Law— privilege against self-incrimination—civil hearing—possibility of criminal prosecution**

A video store owner could properly invoke his constitutional privilege against self-incrimination in a hearing before the board of adjustment where his testimony regarding the sale or rental of certain items could subject him to criminal prosecution.

**4. Zoning— refusal to testify—inference of permit violation**

It was proper for a board of adjustment to infer a violation of a zoning permit from a video store owner's refusal to testify and to conclude that the store qualified as an adult bookstore where there was evidence giving rise to the probability that a majority of his gross income was derived from the sale or rental of adult publications. The owner's refusal to attempt to refute this evidence is tantamount to a silent admission of the charge against him. It is well established that a trier of fact may infer guilt where a civil party has the opportunity to refute damaging evidence but chooses not to do so.

Appeal by petitioner from order entered 31 August 1999 by Judge William H. Helms in Union County Superior Court. Heard in the Court of Appeals 18 October 2000.

*Goodman, Carr, Nixon, Laughrun & Levine, by Miles S. Levine, for petitioner-appellant.*

*Perry, Bundy, Plyler & Long, L.L.P., by H. Ligon Bundy, and Griffin, Smith, Caldwell, Helder & Lee, P.A., by Betsy L. Glenn and W. David Lee, for the respondent-appellees.*

LEWIS, Judge.

Petitioner Norris Davis appeals the trial court's 31 August 1999 order affirming the Town of Stallings Board of Adjustment's determination that petitioner was operating an unauthorized "adult establishment." We affirm the trial court's order.

Davis is the owner and operator of "The Executive Video Club," a video store located in Stallings, North Carolina. On 28 October 1997, Davis obtained a zoning permit for a "change of principal use," allowing a video store with an adult video room. Handwritten on the permit were the following limitations:

This permit is good for a video store with an adult video room. The majority of all movies must not be adult videos. All parking, entrances, and exits must be paved. No adult video signage allowed.

In February 1998, a Zoning Code Enforcement Officer for the Town of Stallings visited Davis's video store, noting that the front area of the store ("non-adult section") contained approximately 800 non-adult videos on the shelves and 82-250 videos waiting to be shelved. The back area of the store ("adult section") contained approximately 882 adult videos and about 180 adult magazines; another "novelty room" in this adult section contained five different items.

On 24 April 1998, the Zoning Officer issued a violation notice to Davis. The cited violation was as follows:

You were issued a zoning permit for a video store with an adult video room on 28 October 1997. A condition on the permit stated that the majority of the movies must not be of an adult nature.

Per an investigation, I determined that you were selling adult magazines along with novelty items. This qualifies the use as an

adult use. Therefore, you must obtain a zoning permit for an ["]adult establishment["] or remove the adult magazines and novelty items. If a zoning permit for an adult establishment is granted, then you must obtain a business license for that use.

On 7 May 1998, Davis appealed from the notice of violation on the basis that his video store did not qualify as an "adult establishment" under the Zoning Ordinance for the Town of Stallings ("the Ordinance"). The Ordinance adopts the definition of "adult establishment" from N.C. Gen. Stat. § 14-202.10(2), which defines the term as "an adult bookstore, adult motion picture theatre, adult mini motion picture theatre, adult live entertainment business, or massage business as defined in this section." The type of "adult establishment" relevant here is an "adult bookstore." N.C. Gen. Stat. § 14-202.10(1) sets forth two definitions for an "adult bookstore." Specifically, an "adult bookstore" is one:

a. Which receives a majority of its gross income during any calendar month from the sale or rental of publications (including books, magazines, other periodicals, videotapes, compact discs, other photographic, electronic, magnetic, digital, or other imaging medium) which are distinguished or characterized by their emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, as defined in this section; or

b. Having as a preponderance (either in terms of weight and importance of the material or in terms of greater volume of materials) of its publications (including books, magazines, other periodicals, videotapes, compact discs, other photographic, electronic, magnetic, digital, or other imaging medium) which are distinguished or characterized by their emphasis on matter depicting, describing, or relating to specific sexual activities or specified anatomical areas, as defined in this section.

In addition, N.C. Gen. Stat. § 14-202.10(9) defines "sexually oriented devices" as, "without limitation[,] any artificial or simulated specified anatomical area or other device or paraphernalia that is designed principally for specified sexual activities but shall not mean any contraceptive device."

In his appeal to the Board, Davis asserted two grounds for reversal of the Zoning Officer's determination: (1) his selling of "sexually

oriented devices" should not factor into whether his business was an "adult bookstore" since such devices are not "publications, books, magazines, or other periodicals" under N.C. Gen. Stat. § 14-202.10(1)(a) or (b), and (2) the "preponderance" of "publications" sold at the video store were not distinguished or characterized by their emphasis on matter related to specified sexual activities or specified anatomical areas, as required under G.S. 14-202.10(1)(b).

On 21 July 1998 and 18 August 1998, a hearing was held before the Town of Stallings Board of Adjustment ("the Board"). At the hearing, the Zoning Officer presented evidence of items contained in Davis's video store on his first visit, along with evidence of additional items discovered on a second visit on 22 July 1998. The second time, the Zoning Officer encountered approximately 1884 videos and 300 comic books in the non-adult section, and approximately 1665 videos, 300 magazines and books, 160 novelty items, and 80 CDS in the adult section. At this hearing, both Davis and his wife invoked their Fifth Amendment right against self-incrimination and refused to testify.

The Board essentially concluded (1) that by displaying on the premises of his video store items other than videos, Davis violated the zoning permit issued to him on 28 October 1997, and (2) that because Davis and his wife refused to testify, they prevented the Board from conducting a full and complete hearing of the relevant evidence needed to determine the applicable issues, giving rise to an inference that his video store constituted an unauthorized "adult establishment." In its mandate, the Board stated that the zoning permit restricted Davis to the rental or sale of *videos only*, the majority of which must not be adult pursuant to N.C. Gen. Stat. § 14-202.10. The Board also mandated that Davis's video store must not constitute an "adult establishment" as defined under the Ordinance. The order allowed Davis thirty days in which to comply.

Davis filed a petition for writ of certiorari with the Union County Superior Court on 20 October 1998 and a writ of certiorari was issued on 5 November 1998. On 31 August 1999, a hearing was conducted by the trial court, which entered a judgment affirming the Board's decision. Davis now appeals.

[1] When reviewing the decision of a board of adjustment, the trial court sits in the posture of an appellate court and is responsible for the following:

(1) Reviewing the record for errors of law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*In re Appeal of Willis*, 129 N.C. App. 499, 500, 500 S.E.2d 723, 725 (1998). If a petitioner contends the Board's decision was based on an error of law, de novo review is proper. *JWL Invs., Inc. v. Guilford County Bd. of Adjust.*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717, *disc. review denied*, 351 N.C. 357, —— S.E.2d —— (1999). However, if a petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the "whole record" test. *Id.* The role of appellate courts is to review the trial court's order for errors of law. *Willis*, 129 N.C. App. at 502, 500 S.E.2d at 726. "The process has been described as a two-fold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.*

[2] Accordingly, we first decide whether the trial court exercised the appropriate scope of review. In this appeal, Davis assigns as error the Board's conclusion that his video store was an "adult establishment" based on his refusal to testify. This presents a question of law warranting de novo review. *Id.* at 501, 500 S.E.2d at 725. We find the trial court applied the appropriate standard of review; thus, we now determine whether the trial court exercised de novo review properly. *Id.*

[3] The constitutional privilege against self-incrimination assures all individuals that they will not be compelled to give testimony which will tend to incriminate them or which will tend to subject them to fines, penalties or forfeiture. *Cantwell v. Cantwell*, 109 N.C. App. 395, 397, 427 S.E.2d 129, 130 (1993). Here, Davis's testimony regarding the sale or rental of certain items could subject him to criminal prosecution under N.C. Gen. Stat. § 14-202.11(a) if such testimony leads to the conclusion that his video store is an "adult establishment." Thus, Davis and his wife could properly invoke the privilege at the hearing before the Board.

**[4]** Having established that Davis and his wife properly invoked the constitutional privilege against self-incrimination, we turn to whether the Board could use their assertion of that privilege to infer that Davis was running an unauthorized "adult establishment." It is well established that a trier of fact may infer guilt on a civil party who has the opportunity to refute damaging evidence but chooses not to. *McKillop v. Onslow County*, 139 N.C. App. 53, 63, 532 S.E.2d 594, 601 (2000). The finder of fact in a civil action may use a witness's invocation of his Fifth Amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him. *Fedoronko v. American Defender Life Ins. Co.*, 69 N.C. App. 655, 657-58, 318 S.E.2d 244, 246 (1984). The foregoing principle was applied in *Gray v. Hoover*, 94 N.C. App. 724, 726, 381 S.E.2d 472, 473, *disc. review denied*, 325 N.C. 545, 385 S.E.2d 498 (1989), an action for divorce that included a charge of adultery. The evidence of adultery consisted of plaintiff's wife going into a condominium with the defendant at night, turning out the lights inside, and not exiting until daytime. *Id.* at 729, 381 S.E.2d at 474-75. At trial the defendant refused to answer questions on the grounds that he might incriminate himself. *Id.* The Court stated:

> "Plaintiff's charge against defendant was adultery; if the evidence of so serious a charge was not true, the defendant had the opportunity to refute it. Whether the charge was true or not, the falsity of it was peculiarly within defendant's knowledge. The fact that [he] did not refute the damaging charge made by plaintiff, it may be that this was a silent admission of the charge made against [him]."

*Id.* at 729, 381 S.E.2d at 475 (quoting *Warner v. Torrence*, 2 N.C. App. 384, 163 S.E.2d 90 (1968)). The rationale underlying this principle has been stated as follows:

> "The privilege of the witness is to prevent testimony which might be used against him in a subsequent criminal suit, and not to keep out probative evidence or any inferences to be drawn from the claim of privilege which might be relevant to the issues in the matter before the court. So, while the claim of privilege may not be used against defendant [or a witness] in a subsequent criminal prosecution, an inference that his testimony would have been unfavorable to him is available to his opponent in a civil cause in which defendant [or a witness] pleads the privilege."

*Fedoronko*, 69 N.C. App. at 657, 318 S.E.2d at 246 (quoting 98 C.J.S. *Witnesses* § 455, at 308 (1957) (footnotes omitted)).

We find the foregoing cases inferring guilt on a civil defendant who refuses to refute damaging evidence dispositive. Here, the evidence before the Board revealed a relatively small disparity between the number of adult and non-adult items qualifying as "publications" in Davis's video store—2045 adult publications and 2184 non-adult publications. This evidence gives rise to the probability that a majority of Davis's gross income was derived from the sale or rental of these adult publications, and thus, fulfills the first definition of "adult bookstore" under G.S. 14-202.10(1)(a). Given this evidence, Davis's refusal to attempt to refute the Zoning Officer's evidence is tantamount to "a silent admission of the charge made against him." *Gray*, 94 N.C. App. at 729, 381 S.E.2d at 475 (citation omitted). This silent admission logically gives rise to an inference of guilt. *In Re Estate of Trogdon*, 330 N.C. 143, 152, 409 S.E.2d 897, 902 (1991). It was therefore proper for the Board to infer a violation from his refusal to testify and thus to conclude that his video store qualified as an "adult bookstore" under G.S. 14-202.10(1).

In light of the foregoing, we conclude the trial court properly exercised its scope of review in upholding the determination of the Board.

Affirmed.

Judges WYNN and HUNTER concur.