2002 OK 80

**TRIANGLE FRATERNITY,**
Plaintiff/Appellant,

v.

**CITY OF NORMAN, ex rel. NORMAN BOARD OF ADJUSTMENT,**
Defendant/Appellee,

and

University Neighborhood Association, a not for profit corporation; Mckinley Elementary School Parent Teacher Association (PTA); Marjorie (Mrs. Duane) Roller; Judy Gibbs Robinson; E. O'Neil Robinson; Timothy Miller; Blake Gumprecht; David Dollarhide; and Victoria Dollarhide, Intervenors/Appellees.

No. 96,363.

Supreme Court of Oklahoma.

Oct. 15, 2002.

Rehearing Denied Feb. 3, 2003.

Anton Rupert, Christopher R. Graves, Oklahoma City, OK, for Plaintiff/Appellant.

Jeff F. Raley, City Attorney, R. Blaine Nice, Assistant City Attorney, Norman, OK, for Defendant/Appellee.

J. Kelly Work Oklahoma City, OK, for Intervenors/Appellees.

KAUGER, J.

¶1 The dispositive issue presented is whether a fraternity's proposed use of a property as a fraternity house constitutes the same use as the property's former use as a retired women's boarding house which would entitle the fraternity to an extension of the existing nonconforming use under the City of Norman's zoning ordinances.[1] We hold that because the fraternity's use of the property is substantially the same as the property's former use, the fraternity is entitled to an extension of the existing nonconforming use.

## FACTS

¶2 This cause concerns a dispute over the zoning and use of a house known as the Kirkpatrick Manor, located at 702 S. Lahoma, in Norman, Oklahoma. On September 29, 2000, the appellant, the University of Oklahoma Chapter of Triangle Fraternity (fraternity), purchased the house from a group affiliated with the Presbyterian Church (Church). The house was originally built for the Pi Kappa Psi Fraternity in 1930. It is undisputed that at the time the house was built, the property was zoned a U–1

---

1. Because we reverse the trial court, we need not address the fraternity's additional arguments raised in the petition for certiorari.

Residence District which allowed use of the property as a fraternity or sorority house.[2]

¶ 3 In 1932, the Pi Beta Phi Sorority (sorority) purchased the property, and it occupied the house until 1958. In 1954, the property was re-zoned to a R–1 District, a category which restricted use of the property to single family dwellings, as well as several semi-public uses such as churches, schools, and libraries, etc.[3] However, under the City of Norman's (City) 1954 zoning ordinances, because the house had been a fraternity or sorority house since it had been built, it continued as a legal, but non-conforming use.[4]

¶ 4 In October of 1958, the sorority, in anticipation of selling the property to the Church, sought to have the property re-zoned from a R–1 District to a R–2 District which specifically allowed boarding and rooming houses.[5] The Church planned to use the property as a women's retirement home.[6] It appears that the City Manager was of the opinion that the proposed use of the property was an entirely different use than a sorority house, and he recommended re-zoning.[7] The City Planning Commission,

2. The 1924 original zoning ordinance does not appear in the record. However, in a memorandum from the City's planning division to the City Manager, the City describes the zoning history prior to 1954 and it provides in pertinent part:

   "... Norman had an adopted zoning ordinance in 1924, which was much simpler than today's version. Ordinance # 401 listed five *use districts*, the lowest being the U–1 Residence district. That district governed this tract. Section III of that code allowed, by right, 'religious and fraternal dormitories, **college fraternities and sororities,** and private clubs, except a club the chief activity of which is service customarily carried on as a business.' *When this structure was first built, the fraternity/sorority use was legal and conforming.* ..." (Emphasis in original.)

   The fraternity does not dispute the City's description of the original ordinance.

3. The 1954 City of Norman Zoning Ordinance No. 884, Article II, § 1 provides in pertinent part:

   "R–1   Single–Family Dwelling District:
   1.1   Uses Permitted:
   Property and building in a R–1, single-family dwelling district, shall be used only for the following purposes:
   (a) Detached one-family dwelling.
   (b) Church.
   (c) School offering general educational courses the same as ordinarily given in public schools and having no rooms regularly used for housing and sleeping.
   (d) Library. . . ."

4. Title 11 O.S.2001 § 44–107.1(A) provides:

   "The lawful nonconforming use of a building, structure or premises as such existed at the time of the adoption and recording of any ordinance affecting it, may be continued, although such use does not conform with the provisions of such ordinance. The municipality may provide for the termination of lawful nonconforming uses either by specifying the period or periods within which such use shall be required to cease, or by designating conditions or circumstances which shall cause such use to cease, or by providing a formula or formulas whereby the compulsory termination of a nonconforming use shall be so fixed as to allow a reasonable period for the amortization of the investment in the nonconformance."

   The 1954 City of Norman Zoning Ordinance No. 884, Article V, § 30 defined non-conforming use as:

   "Any lawful use of land, building or structure, existing at the time of adoption of the Zoning Map, which does not conform with the regulations of the district in which it is situated."

   Article I, § 9 provides in pertinent part:

   "Non–Conforming Uses:
   Any use or structure existing at the time of enactment or subsequent amendment of this Ordinance, but not in conformity with its provisions, may be continued with the following limitations. Any use or building which does not conform to the provisions of this Ordinance may not be:
   (a) Changed to another non-conforming use;
   . . ."

5. The 1954 City of Norman Zoning Ordinance No. 884, Article II, § 2 provides in pertinent part:

   "R–2, Two-family Dwelling District:
   2.1   Property and buildings in a R–2, two-family dwelling district, shall be used only for the following purposes:
   (a) Any uses permitted in R–1, single-family dwelling district.
   (b) Two-family dwelling, or a single-family dwelling and a garage apartment.
   (c) Boarding house, rooming house. . . ."

6. The 1954 City of Norman Zoning Ordinance No. 884, Article V, § 7 defined boarding house as:

   "A building other than a hotel where, for compensation and by prearrangement for definite periods, meals, or lodging, and meals, are provided for (5) or more persons."

7. The minutes of the October 8, 1958 City Planning Commission meeting provide in pertinent part:

concerned that the property might be used as a rest home or convalescent home, denied the request. Instead, it decided that the property could be used as a private club, with restrictions—a permissive use in the R–1 District.[8] An ordinance was passed on November 11, 1958, which reflected the commission's decision.

¶5 In 1962, the Church applied for re-zoning of the lot next to the house because it wanted to expand, but the application was denied. The term "private club" was not a defined term in the City's ordinances, and that designation as a special use was eliminated from the ordinances in 1985. Even though the Church never sought a rooming and boarding license, the Church operated the retired women's home as a boarding house until it sold the property to the fraternity. After the fraternity purchased the property, it sought a rooming/boarding house license, which the City requires from all fraternities and sororities. Although the property was not zoned for a rooming/boarding house, the fraternity sought the permit under the theory that its use of the property was a continuation of the use made by the Church and that it qualified as a nonconforming use under the City's ordinances.[9]

¶6 Staff for the City of Norman initially agreed with the fraternity. However, several neighbors objected. After the City uncovered the minutes from the 1958 meeting and the old ordinance which had declared the property a private club, the appellee, Board of Adjustment (Board) determined on December 13, 2000, that the fraternity's proposed use of the property was not a legal nonconforming use, and that the fraternity must seek to have the property re-zoned.

¶7 The fraternity appealed to the district court and the neighborhood association intervened. The district court, after a *de novo*[10] review, affirmed the Board. It determined,

---

"... Mr. Luttrell explained that he and the City Manager had studied the situation very carefully and had given an administrative opinion that the proposed new use would not be the same as the present use. This was the reason that the petition sought to have the property rezoned."

**8.** The 1954 City of Norman Zoning Ordinance No. 884, Article II, § 1 provides in pertinent part:

"R–1   Single–Family Dwelling District:

...

1.2   Uses Permissible on Review:

The following uses may be permissible on review by the City Planning Commission in accordance with provisions contained in Article III, section 6, provided that structures incidental to these uses are located twenty-five (25) feet from any property line:

(a) Municipal use, public building and public utility.

(b) Private club not conducted for profit."

The minutes of the October 8, 1958 City Planning Commission meeting provide in pertinent part:

"... In a general discussion it was determined that the proposed boarding home for elderly women would have these characteristics:

1. It is a nonprofit organization

2. No sick or infirm person would be allowed membership or residence in the club or building.

3. The property is not to be used as a rest home

4. Meals will be furnished

5. The nature of the club would be of such high character that there would be no adverse effect upon neighboring property."

**9.** The Code of the City of Norman, Zoning Ordinance § 22–419 NON–CONFORMING USES provides:

"*1. Continuation.* Any use or structure existing at the time of enactment or subsequent amendment of this Ordinance, but not in conformity with its provisions, may be continued with the following limitations. Any use or building which does not conform to the provisions of this Ordinance may not be:

(a) Changed to another non-conforming use.

(b) Re-established after discontinuance for two years.

(c) Extended except in conformity to this Ordinance.

Provided, however, that all buildings and uses existing at the time of passage of this Ordinance which do not comply with the required off-street parking requirements, as specified in Article XII, Sec. 431.5–431.9, shall not be defined as non-conforming uses because of lack of said off-street parking facilities under the terms of this Ordinance. (Ord.884, Art. 1, Sect.9)."

**10.** Title 11 O.S.2001 § 44–110(D) provides in pertinent part:

"A.   An appeal from any action, decision, ruling, judgment or order of the board of adjustment may be taken ... to the district court in the county in which the municipality is located.

...

D.   The appeal shall be heard and tried de novo in the district court...."

as a matter of law and fact, that the fraternity's proposed use of the property differed from the Church's use of the property, and that it was not the same nonconforming use. The fraternity appealed, and on April 5, 2002, the Court of Civil Appeals affirmed. We granted certiorari on June 5, 2002.

¶ 8 BECAUSE THE FRATERNITY'S PROPOSED USE OF THE PROPERTY IS SUBSTANTIALLY THE SAME AS THE PROPERTY'S FORMER USE, THE FRATERNITY IS ENTITLED TO AN EXTENSION OF THE EXISTING NONCONFORMING USE.

■ ¶ 9 A nonconforming use of property relates to the use of land which existed prior to the enactment or change of a zoning ordinance. It is a use which is impermissible under the zoning code, but allowed because the use existed lawfully before the use restrictions became effective.[11] Once a lawful nonconforming use of property is established in the City of Norman, it may continue from one owner to another, as long as the nonconforming use remains the same.[12]

¶ 10 The City and the neighborhood association assert that the fraternity's proposed use of the property as a fraternity house is a change in use from the retirement home for elderly women and, as such, is prohibited. The fraternity insists that its proposed use is the same as the current lawful nonconforming use, and that because its use will not change, it is entitled to an extension of the existing nonconforming use. The City also argues that there is a presumption of correctness in the Board's decision, and that we must affirm the trial court because its decision was neither against the weight of the evidence nor arbitrary or capricious.

■ ¶ 11 This Court has generally characterized proceedings in district court on appeals from Boards of Adjustment in zoning matters as being equitable in nature, and we have recognized that the question on review is whether the judgment of the district court is clearly contrary to the weight of the evidence.[13] A presumption of correctness attaches to the Board's decision when it has been affirmed by the district court which should be given great weight. The Board's decision should not be overturned unless it is arbitrary or clearly erroneous.[14] The reviewing court may not simply substitute its judgment and discretion.[15] We agree that we must defer to the trial court's factual findings if they are supported by the evidence. However, because the determination of whether a nonconforming use has changed involves the application of the established facts to a legal standard, it is as a question of law which should be reviewed *de novo*.[16]

11. The Code of the City of Norman, Zoning Ordinance § 22–419, see note 9, supra; *City of Sugar Creek v. Reese*, 969 S.W.2d 888, 891 (Mo.App.1998)[Nonconforming use means use of land that lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions.]; *State ex rel. Brooks v. Hartland Sportsman's Club, Inc.*, 192 Wis.2d 606, 531 N.W.2d 445, 448 (1995)[A legal nonconforming use is a use of land for purposes not permitted under the zoning ordinance, but which was an active and actual use existing prior to the commencement of the zoning ordinance.].

12. The Code of the City of Norman, Zoning Ordinance § 22–419, see note 9, supra.

13. *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, ¶ 17, 875 P.2d 1138 [Review of denial of conditional use permit for landfill.]; *Vinson v. Medley*, 1987 OK 41, ¶ 10, 737 P.2d 932 [Denial of zoning variance.]; *Walkingstick v. Board of Adjustment of City of Tulsa*, 1985 OK 70, ¶ 29, 706 P.2d 899 [Zoning ordinance variance to permit drilling.]; *Banks v. City of Bethany*, 1975 OK 128, ¶ 6, 541 P.2d 178 [Denial of variance from zoning ordinance.]; *Bailey v. Uhls*, 1972 OK 147, ¶ 13, 503 P.2d 877 [Denial of variance to erect sign.]; *Brown v. Fraser*, 1970 OK 50, ¶ 19, 467 P.2d 464 [Denial of variance to construct residence.]; *Board of Adjustment of Oklahoma City v. Shanbour*, 1967 OK 189, ¶ 15, 435 P.2d 569 [Denial of special permit.]; *Thompson v. Phillips Petroleum Co.*, 1944 OK 168, ¶ 6, 147 P.2d 451 [Denial of permit to drill well.]; *Application of Shadid*, 1951 OK 359, ¶ 16, 238 P.2d 794 [Denial of application for permit to enlarge grocery store in residential area.].

14. *Bankoff v. Board of Adjustment of Wagoner County*, see note 13, supra; *Banks v. City of Bethany*, see note 13, supra; *Application of Shadid*, see note 13, supra.

15. *Banks v. City of Bethany*, see note 13, supra; *Bailey v. Uhls*, see note 13, supra.

16. *Racine County v. Cape*, 2002 WI App 19, ¶ 5, 250 Wis.2d 44, 639 N.W.2d 782, 784 [Whether a particular use is an identifiable change of a legal

¶ 12 We have not addressed the precise issue of whether the use of property as a fraternity house constitutes the same use of property as a retirement home for elderly women. However, our decision in *Royal Baking Co. v. Oklahoma City*, 1938 OK 75, 75 P.2d 1105 is instructive.

¶ 13 The primary issue in *Royal Baking* involved the right of a business to use a frame structure on its business premises for a garage or repair shop for its trucks. The business purchased two lots which adjoined its property and converted a little house on one of the lots into a garage and repair shop. A zoning ordinance was passed which zoned the area, restricting the use of property to the building of apartment houses and similar structures. In discussing the need for the business to be allowed to accommodate an increased trade, the opinion held at ¶ 17:

"... The business has not changed in kind. The neighborhood will not be changed or seriously injured by the enlarged incidental use to which the premises are put. By allowing a degree of elasticity in the application of the ordinance so that no arbitrary or unreasonable burden is imposed upon the pursuit of the occupation involved, we can, in view of all the circumstances of this case, avoid the necessity of declaring the ordinance unconstitutional in its application or its general scope ..."

¶ 14 *Royal Baking* teaches that before deciding whether a lawful nonconforming use has changed or expanded, a determination must be made concerning whether the nature of the use has substantially changed, or whether the proposed use is of a character to change the neighborhood to ensure that the ordinance is not applied arbitrarily. Other courts have employed a similar rationale when considering whether a proposed use is the same as a pre-existing use. These courts generally determine that a proposed use must be a substantial change in the nature, character, or purpose of the pre-existing nonconforming use before it is no longer allowed.[17]

nonconforming use is a question of law reviewed de novo.]; *Hugoe v. Woods Cross City*, 1999 UT App 281, ¶ 6, 988 P.2d 456, 457 [Question of use of property as a legal nonconforming use presents a question of law.]; *State* ex rel. *Brooks v. Hartland Sportsman's Club, Inc*, see note 11, supra [Determination of legal nonconforming use involves application of facts to legal standard presenting question of law reviewable de novo.]. See also, *Hannigan v. City of Concord*, 144 N.H. 68, 738 A.2d 1262, 1265 (1999) [Interpretation of zoning ordinance and the determination of whether a use is accessory use are questions of law for reviewing court to decide.]; *Christy's Realty Limited Partnership v. Town of Kittery*, 663 A.2d 59, 61 (Me.1995)[Whether a proposed use falls within a given category contained in a zoning ordinance is a question of law.]; *McMahon v. Kingston Township Board of Supervisors*, 771 A.2d 96, 98 (Pa.Cmwlth.2001)[Whether a proposed use falls within a given category specified in a zoning ordinance is a question of law.]; *Davis v. Town of Stallings Board of Adjustment*, 141 N.C.App. 489, 541 S.E.2d 183, 186 (2000) [Whether owner's video store was an adult establishment presented a question of law, warranting de novo review.]; *Graham v. Itasca County Planning Commission*, 601 N.W.2d 461, 467 (Minn. App.1999) [The application of an ordinance to established facts is a question of law.]. But see, *Bonaventure International, Inc. v. Borough of Spring Lake*, 350 N.J.Super. 420, 795 A.2d 895, 904 (2002) [Issue of expansion from a nonconforming use is a question of mixed law and fact.]; *Heilker v. Zoning Board of Appeals*, 346 S.C. 401, 552 S.E.2d 42, 47 (2001)[A zoning board determination regarding whether a particular activity or purpose constitutes use of property is a finding of fact.]; *Bauer v. City of San Diego*, 75 Cal.App.4th 1281, 89 Cal.Rptr.2d 795, 802 (1999) [Generally, the determination of whether an existing legal nonconforming use should continue to be allowed under grandfathered provisions involves mixed questions of law and fact.].

17. See, *Town of Salem v. Wickson*, 146 N.H. 328, 770 A.2d 1120,1122 (2001)[Although stockpiling earthen materials was not substantially similar to prevailing nonconforming use, to determine substantial change, court considers the extent use in question reflects the nature and purpose of the prevailing use; whether use is different in character, nature and kind; and whether use will have substantially different effect on neighborhood.]; *Turbat Creek Preservation v. Town of Kennebunkport*, 2000 ME 109, 753 A.2d 489, 492 (2000) [Determining that use of boathouse was not grandfathered use, but recognizing that grandfathering nonconforming use requires that proposed use reflect the nature and purpose of use prevailing when ordinance was enacted and may not differ in quality or character, as well as in degree from original use or different in kind in its effect on neighborhood.]; *DiBlasi v. Zoning Board of Appeals of the Town of Litchfield*, 224 Conn. 823, 624 A.2d 372, 376 (1993) [Finding that change in use from business office to medical office was not sufficiently different in character to constitute a change in use.]; *Derby Refining Co. v. City of Chelsea*, 407 Mass. 703, 555

¶ 15 At trial, the evidence established that the property was used as a fraternity or sorority house from 1930 until 1958. From 1958 to 2000, the property was used as a retirement home for women. During its use as a retirement home, 20–22 persons lived there. Meals were prepared for them, social and recreational activities were organized, and some of the residents had automobiles.

¶ 16 The fraternity proposes to use the property as a fraternity house for meetings, activities, parties and other occasional functions. The fraternity currently has about 22 or 23 members, plus uninitiated pledges and expects 22 or 23 of its members to occupy the house. It hopes to expand its membership to 45 to 60 members, who will attend meetings and other functions at the house. Alcohol will be allowed on the premises by persons of legal age, subject to the rules of the fraternity and the University of Oklahoma Inter Fraternity Council. Neither the fraternity house, nor the women's retirement home are defined under the current zoning code, but both clearly meet the code's definition of boarding house.[18] The City requires all fraternities and sororities to obtain a boarding house permit.

¶ 17 In our view, the fraternity's proposed use of the property is substantially the same as that in existence since it was built in 1930. The character of its use as a residential building for persons who are not members of the same family where rooms are rented on a monthly or longer basis, meals are provided, and social activities occur has not changed in the seventy years since the house was built. The character of the neighborhood would not significantly change by the fraternity's occupancy of the home. The evidence presented at trial reveals that the only real difference [19] in the fraternity's proposed use and the Church's prior use of the property is the age of the occupants coupled with an increase in the volume, intensity, and frequency of social gatherings. However, a mere increase in volume, intensity, or frequency of a nonconforming use is generally recognized as insufficient to invalidate it.[20]

N.E.2d 534, 539 (1990) [Whether change or expansion occurs the court inquires into the nature and purpose of prior use; the difference in quality or character; and whether use is different in kind in its effect on the neighborhood.]; *Jones v. Rommell*, 521 A.2d 543, 545 (R.I.1987) [In dispute over change in use based on inadequate number of parking spaces, the court recognized that a change of use results when the proposed us is substantially different from the nonconforming use to which the premises were previously put.]; *Bonaventure International, Inc. v. Borough of Spring Lake*, see note 16, supra [Although restaurant improperly expanded use, the court recognized that present use must be substantially similar to use at time it became nonconforming and focus is on the quality, character and intensity of expansion.]; *Zoning Board of Adjustment of City of Philadelphia v. Libros*, 85 Pa.Cmwlth. 485, 482 A.2d 1181, 1183 (1984) [Use did not involve significantly greater capital equipment or greatly expanded operations to constitute a new use.]. See generally, Eichelberger, E., Annot., "Change in Type of Activity of Nonconforming Use as Violation of Zoning Ordinance," 61 A.L.R. 4th 903 (1988).

18. The Code of the City of Norman, Zoning Ordinance § 22–450 provides in pertinent part:

"(10) BOARDING HOUSE. A residential building, other than a hotel, where, for compensation and by prearrangement for definite periods, on a monthly or longer basis, rooms and meals are provided to more than two (2) persons who are not members of the resident manager's family."

19. The City of Norman relies on *City of Long Beach v. California Lambda Chapter*, 255 Cal. App.2d 789, 63 Cal.Rptr. 419 (1967); *Phi Kappa Iota Fraternity v. Salt Lake City*, 116 Utah 536, 212 P.2d 177 (1949); and *Coleman v. City of Walla Walla*, 44 Wash.2d 296, 266 P.2d 1034 (954) in support of its argument that fraternity houses differ from boarding houses. However, we find these cases unpersuasive as applied to the facts of the present case. The City also argues that throughout the Code, fraternity houses and boarding houses are subject to a multitude of different requirements. We recognize that different requirements relate to fraternity houses and boarding houses under the Code, nevertheless, the fact that different requirements apply, is not determinative of whether the both uses are substantially similar in character.

20. *DiBlasi v. Zoning Board of Appeals of the Town of Litchfield*, see note 17, supra [Change in intensity of use is not an acceptable criterion for determining whether proposed use is a change is use.]; *City of Jewell Junction v. Cunningham*, 439 N.W.2d 183, 186 (Iowa 1989)[Recognizing that increase in business alone does not constitute an illegal extension of nonconforming use, the court held that facility change from care of elderly persons with mental problems to care of younger residents with records of mental illness did not change legal nonconforming use.]; *Keller v. City of Bellingham*, 92 Wash.2d 726, 600 P.2d 1276, 1279 (1979)[Intensification of a nonconforming

Consequently, we hold that the fraternity is entitled to an extension of the existing nonconforming use.

## CONCLUSION

¶ 18 A nonconforming use of property is a use which is impermissible under the zoning code, one which is allowed because the use existed lawfully before the use restrictions became effective.[21] An established lawful nonconforming use of property may continue from one owner to another, as long as the nonconforming use remains the same.[22] A proposed use must create a substantial change in the nature, character, or purpose of the pre-existing nonconforming use before it is no longer allowed. Although there will be an increase in volume, intensity, and frequency of use, the evidence presented at trial reveals that the fraternity's proposed use and the Church's use of the property are substantially the same. Even if the question of whether the nonconforming use had changed were not reviewed *de novo*, under the evidence presented, the Board's decision was arbitrary and clearly erroneous and the judgment of the trial court clearly contrary to the weight of the evidence. Consequently, we hold that the fraternity is entitled to an extension of the existing nonconforming use. The cause is reversed and remanded for the trial court to enter judgment in favor of the fraternity and against the City of Norman.

use is permissible if nature and character is unchanged and substantially the same facilities are used.]; *Institute for Evaluation and Planning, Inc. v. Board of Adjustment,* 270 N.J.Super. 396, 637 A.2d 235, 237 (1993) [Mere increase in intensity of use is not fatal to continuation of nonconforming use.]; *Waukesha County v. Seitz,* 140 Wis.2d 111, 409 N.W.2d 403, 406 (1987) [Although increase in volume, intensity, or frequency of use, coupled with some element of identifiable change or extension will invalidate legal nonconforming use, mere increase in volume, intensity, or frequency of nonconforming use is not sufficient to invalidate it.]; See also, *Phillips v. Zoning Commissioner of Howard County,* 225 Md. 102, 169 A.2d 410 413 (1961) [Recognizing that mere intensification of non conforming use is permissible as long as the nature of the use has not substantially changed.].

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED WITH INSTRUCTIONS.

HARGRAVE, C.J., WATT, V.C.J., HODGES, SUMMERS, BOUDREAU, WINCHESTER, JJ., concur.

OPALA, J., concurs by separate writing.

LAVENDER, J., dissents.

OPALA, J., concurring.

¶ 1 The proof adduced at *nisi prius* supports the court's conclusion that Triangle Fraternity's use of the premises will be substantially the same as that of its predecessor. The trial court's finding against Triangle Fraternity is clearly contrary to the weight of the evidence.

¶ 2 *The right to continue a preexisting, nonconforming use is ascribed (affixed) to the soil and hence accrues to all succeeding owners.* Schultz v. Zoning Bd. of Appeals, 144 Conn. 332, 338, 130 A.2d 789, 791 (1957). A "mere change in ownership does not destroy the [right to enjoy the] pre-existing nonconforming use." *Harmel Corp. v. Members of the Zoning Bd. of Review,* 603 A.2d 303, 306 (R.I.1992). *See also Carbone v. Vigliotti,* 222 Conn. 216, 610 A.2d 565 (1992); *Urban v. Planning Bd.,* 124 N.J. 651, 592 A.2d 240 (1991); *Town of Coventry v. Glickman,* 429 A.2d 440 (R.I.1981); *Watts v. City of Helena,* 151 Mont. 138, 439 P.2d 767 (1968); *Jackson v. Pottstown Zoning Bd.,* 426 Pa. 534, 233 A.2d 252 (Pa.1967).

See generally, Eichelberger, E., Annot., "Change in Volume, Intensity, or Means of Performing Nonconforming Use as Violation of Zoning Ordinance," 61 A.L.R.4th 806 (1988). But see, *Huff v. Board of Adjustment of City of Independence,* 695 S.W.2d 166, 168 (Mo.App.1985) [Whether change in use is substantially similar is neither relevant nor decisive because the ordinance clearly prohibits a change from one nonconforming use to another.].

**21.** The Code of the City of Norman, Zoning Ordinance § 22–419, see note 9, supra; *City of Sugar Creek v. Reese,* see note 11, supra; *State ex rel. Brooks v. Hartland Sportsman's Club, Inc,* see note 11, supra.

**22.** The Code of the City of Norman, Zoning Ordinance § 22–419, see note 9, supra.

¶3 I hence concur in the court's pronouncement.