GEORGE LEVITIN, PLAINTIFF, v. BOARD OF ADJUST-
MENT (ZONING) OF THE TOWN OF BLOOMFIELD,
DEFENDANT.

Superior Court of New Jersey
Law Division

Decided March 10, 1961.

*Mr. Abraham P. Bab,* attorney for plaintiff.

*Mr. Joseph D. Lintott,* attorney for defendant Town of Bloomfield.

WAUGH, A. J. S. C. This is an action in lieu of prerogative writs, seeking to set aside a resolution of the Zoning Board of Adjustment of the Town of Bloomfield, which board denied plaintiff's application for a variance and refused to make a recommendation for the same to the mayor and council of the defendant town.

The plaintiff is a purchaser under contract of certain vacant and unimproved land known as Lot 48, Block 1082 (Tax Map, Town of Bloomfield); the property is known as 191 Watchung Avenue, and is a vacant lot 124 feet front by 348 feet deep. It varies in elevation from 170.26 to 159.6 feet, sloping to the north. Generally, the property fronts on Watchung Avenue to the south, the easterly side line faces the Garden State Parkway, and the westerly side line is almost contiguous to the Third River, a well known drainage stream in the municipality.

The property is situated in Zone R5 (see article VII, section A, Zoning Ordinance of the Town of Bloomfield, adopted June 15, 1959) in which single family residences

are permitted, as well as churches, schools, public buildings, golf courses, and public utility installations.

The plaintiff sought a permit to erect a motor hotel on the property under contract. The proposed building is a two-story cinder block and brick completely fireproof building, with stone and wood trim and covered by a flat roof. It would contain 32 motel units. Provision is made for parking 33 cars; 7 of those may be parked inside. The approximate cost of the entire facility, inclusive of land, is $140,000.

A permit was refused by the building inspector. Plaintiff applied to the board of adjustment under *N. J. S. A.* 40:55–39(d). The parties agree the appication was made April 1, 1960 and denied April 5, 1960; and the application to the board of adjustment was made April 6, 1960. The application to the board of adjustment, indicates a filing date to the board as March 31, 1960. This fact is not important to a decision here.

A hearing before the board of adjustment took place on June 9, 1960. On June 16, 1960, by resolution, the board voted 3–2 to deny the variance for these reasons.

"(a) The erection and operation * * * of a motor hotel is not compatible with the accepted permissible uses in the Residential (R–5) Zone;

(b) The granting of the application would be detrimental to the surrounding properties and depreciate their values;

(c) The relief sought cannot be granted without substantial detriment to the public good and will substantially impair the intent and purpose of the Zone Plan and Zoning Ordinance;

(d) And insufficient special reason being shown why said variance should be granted;"

This action ensued.

These facts were developed in the record below:

1. The plaintiff is under contract to purchase the property for an undisclosed sum, but if he is unsuccessful in obtaining a variance the contract is voided.

2. The property here in question is somewhat uniquely situated in that it is cut off from the balance of the residential district

by the Third River and is isolated in that it is bounded and surrounded by the Third River and the Garden State Parkway. However, there is the fair inference that property Lot 2 1080 Tax Map Town of Bloomfield is similarly situated, as is all residential property contiguous to the Garden State Parkway. It is suggested in plaintiff's brief that this land has been rezoned for two-family houses, but this allegation is denied by defendant. It would seem to the court that both properties should be treated similarly.

3. A nonconforming use exists on Lot #40, some 200 feet or less from the westerly boundary of the premises in question. The nonconforming use, all on one parcel, consists of a gasoline station, an auto parking lot and a milk vending machine. They are depicted on Exhibits P2–N, P2–R, P2–Q. They existed prior to the adoption of the present zoning ordinance.

4. The general area in which the premises in question are located are all in R–5 (one-family) zone, and the area appears to be developing as a residential zone. There is nothing in the record to indicate to the contrary. Neither is there any evidence to prove that the Third River is an insurmountable barrier to the continued growth of the residential section. Two B–2 zones in which presumably motels might be permitted are located one to the north of the premises in question and one to the west, both fronting on Broad Street.

5. It is proposed to erect two signs on the property, each 10 feet by 22 feet, or 220 square feet each, whereas signs in the residential zone R–5 are restricted to one square foot (see article XI, section A, zoning ordinance).

6. The premises in question contain 27,000 square feet. Minimum lot area in the zone (R–5) is 5,000 square feet. The defendant concedes that the property could be subdivided into two lots.

7. There is no evidence to controvert plaintiff's testimony that it would cost $12,000 to $15,000 to properly prepare the property for residential purposes.

8. Numerous commercial enterprises established in the town and outside communicated with the board through counsel for the plaintiff, suggesting that motel accommodations would be very beneficial to local industry. The argument was also made that ratables would be available to the municipality, without the necessity of providing services such as school and the like in return.

In view of this record, should the denial of a recommendation by the board be sustained?

"The action of a board of adjustment in denying a variance is presumptively correct and the person assailing the action has the burden to prove otherwise. *Brandt v. Zoning Bd. of Adjustment, Mt. Holly Tp.*, 16 *N. J. Super.* 113 (*App. Div.* 1951). On judicial review the proper issue is whether the board acted reasonably upon

the showing made before it and its denial will be sustained in the absence of an affirmative showing that it was unreasonable, arbitrary or capricious." *Rexon v. Board of Adjustment, Haddonfield,* 10 *N. J.* 1, 7 (1952) ; *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405 (1952).

■ The nonconforming use existing on lot #40 does not justify or compel the grant of this variance. As Justice Heher said in *Beirn v. Morris,* 14 *N. J.* 529, 536 (1954) : "If the rule were otherwise, one variation would sustain if it did not compel others, and thus the general regulation would in time be rendered abortive." (Citing *Scaduto v. Town of Bloomfield,* 127 *N. J. L.* 1 (*Sup. Ct.* 1941) ; *Berry v. Recorder's Court of Town of West Orange,* 124 *N. J. L.* 385 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 273 (*E. & A.* 1940).) In any event, the fact is that this nonconforming use antedated the present zoning ordinance.

■■ Here the plaintiff has the property under contract, which becomes void if the variance is not granted. In applications under *N. J. S. A.* 40:55–39(c) undue hardship cases the purchase of the land after the adoption of the regulation is a circumstance to be considered. *Aschenbach v. Inhabitants of City of Plainfield,* 121 *N. J. L.* 598 (*Sup. Ct.* 1939), affirmed 123 *N. J. L.* 265 (*E. & A.* 1939). The board had a right to consider the type of contract in this case, because the record is devoid of any evidence that the property in question cannot be utilized for any of the uses permitted in R–5 district.

"It is not *per se* a sufficient reason for a variation of the general rule that the nonconforming use would be more profitable to the landowner. The converse course would subvert the principle of zoning. * * * the intrusion of a forbidden business use in a Residence zone, by means of a variance, to increase the tax ratables, real or personal, is equally inadmissible. Such a course would contravene the constitutional and statutory principle of zoning by districts in accordance with the character of the lands and structures and their peculiar suitability for particular uses, and uniformity of use within the division. It would make for 'spot zoning' and the disintegration of zone classification." *Moriarty v. Pozner,* 21 *N. J.* 199, 208, 209 (1956).

Further, at *page* 209, Justice Heher says:

"And, *a fortiori*, it would be a palpable misuse of the board's administrative function to provide for a business use of this tract, zoned for residences by the local legislative authority, in order to avoid the cost of school facilities and administration were it devoted to the ordained use. * * * Use classification is a legislative province; and the board has no legislative power whatever."

Part of the difficulty with building residences on the premises in question, according to the record, is its location near the Garden State Parkway. Mr. Roddy, testifying for the plaintiff, in response to a question on the effect of the Garden State Parkway on a residence zone replied:

"Since the Garden State Parkway was put through our town, we have found a sales resistance to properties that are abutting the Garden State Parkway. Due to, No. 1, the noise; due to, No. 2, the fumes; due to, No. 3, the outlook, and due to, No. 4, safety of the children.

So, with these four factors it creates a problem. We find property abutting the Garden State Parkway does not command a higher price than those 3, 4, and 500 feet away from the Garden State Parkway."

In effect, Mr. Roddy is saying that all property along the Garden State Parkway suffers a general hardship. The premises in question situated as it is near a parkway exit, according to Mr. Roddy, is depreciated more; nevertheless "General hardship is relievable only by a revision of the general rule of the ordinance or by the judicial process" and a "variance is a relaxation of the general rule of the ordinance to alleviate conditions peculiar to a particular property, and thus to permit a use to which it is adapted and avoid an undue invasion of the right of private property by compelling conformance to an unsuitable permissible use, a burden upon the individual landowner that would be disproportionate to the common need. It has reference to a property uniquely circumstanced." *Moriarty v. Pozner, supra,* at *pp.* 210, 211.

The court does not suggest that "hardship, some zoning burden peculiar to the property in question and that common to the entire district," is a necessary essential to granting relief to the plaintiff. Our cases are to the contrary. In *Andrews v. Ocean Tp. Board of Adjustment*, 30 *N. J.* 245, 250–251 (1959), the Chief Justice held that *N. J. S. A.* 40:55–39(d) contains no such prerequisite—namely, special hardship—as does *subsection* (c). Special hardship may, however, constitute a special reason under *subsection* (d), but does not "exhaust the subject."

"Each case must turn upon its own circumstances," said the Chief Justice in *Andrews, supra,* but our basic philosophy on the part to be played by the zoning board and town council is set forth in *Ward v. Scott,* 11 *N. J.* 117 (1952) and 16 *N. J.* 16 (1954), and more recently *Grundlehner v. Dangler,* 29 *N. J.* 256 (1959), where the court stated:

"Variances allowing new nonconforming uses have generally been viewed with hostility by our courts, which have consistently stressed that variances tend to impair sound zoning and should be granted only sparingly and with great caution. [Citations omitted.] But while stressing their thesis our courts have, with equal consistency, acknowledged that under our triune system the determination as to whether there should be an exceptional variance power rests entirely with the Legislature and not at all with the court; that where a variance is granted by municipal officials pursuant to statutory authority it is entitled to the customary judicial presumption of validity; and that the court may not intervene to set aside such variance except upon a showing that the action of the municipal officials was arbitrary, capricious or in manifest abuse of their discretionary authority.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

In determining whether the grant of a variance is to be upheld or set aside the court must consider each case on its own particular facts. [Citations omitted] The use being permitted must be viewed in the light of the surroundings as they actually are and that will include all 'uses which by whatever authority exist in a neighborhood.' " (*pp.* 266, 267)

Again, in *Ward v. Scott, supra:*

"\*　\*　\* we are equally convinced that the sanctioning of far-reaching zoning restrictions must fairly be accompanied by sym-

pathetic recognition that there will arise, from time to time, exceptional situations which will justly call for individual variances within the prescribed legislative conditions and standards. * * * Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people are undoubtedly the best equipped to pass initially on such applications for variance. And their determinations should not be approached with a general feeling of suspicion, for as Justice Holmes has properly admonished: 'Universal distrust creates universal incompetence.' * * * Where, as here, the application for variance has been given careful and conscientious consideration by the zoning board and the town council and has been acted upon by both of them in strict conformity with the procedural and substantive terms of the statute, the ultimate interests of effective zoning will be advanced by permitting the action of the municipal officials to stand, in the absence of an affirmative showing that it was manifestly in abuse of their discretionary authority." (16 *N. J.*, at *p.* 23)

The board of adjustment in this case was called upon to consider the invasion of a residential district by a motel based upon the testimony of one expert, Mr. Roddy, that the variance "can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the Zoning Ordinance," his testimony being that it would be uneconomical to construct a one-family house on the property.

The board was entitled to consider that only one property has nonconforming uses (predating the present ordinance) on it; that the motel will contain two signs, each 220 square feet, whereas only one-square foot signs are permitted in R–5 zone. See article XI, section A, of the zoning ordinance.

True, the property backs against the Third River and is somewhat isolated, but, again, there was no evidence of inability to sell for residential or other conforming purpose. The board in these cases is called upon to weigh, as Justice Heher said in *Moriarty,* the "burden upon the individual landowner" to determine if it would be "disproportionate to the common need," and to consider the "public and private interests."

216

Based upon the record, I cannot find any abuse of discretion by the board of adjustment.

Judgment for the defendant.