637 A.2d 235

INSTITUTE FOR EVALUATION AND PLANNING, INC., A NEW JERSEY NON PROFIT CORPORATION, JOHN MARTIN, AND MARY MARTIN, PLAINTIFFS, v. BOARD OF ADJUSTMENT AND ZONING OFFICER OF THE BOROUGH OF FREEHOLD, DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided April 5, 1993.

*Peter R. LaFrance,* for plaintiffs (*Mehr & LaFrance,* attorneys).

*Vincent E. Halleran, Jr.,* for defendant Board of Adjustment of the Borough of Freehold.

*Richard T. O'Connor,* for defendant Zoning Officer of the Borough of Freehold.

O'HAGAN, J.S.C.

The plaintiffs, Institute for Evaluation and Planning, Inc., (hereafter IEP) and John Martin and Mary Martin, appeal from the denial of their application by the Freehold Zoning Board of Adjustment. The court, on the plaintiffs' motion for summary judgment, finds that the use proposed is allowed by law since it does not impermissibly expand a non-conforming use, and therefore, grants judgment reversing the Board's decision.

The plaintiffs John Martin and Mary Martin are the contract purchasers of Lots 15 and 16 in Block 28 situated at the intersection of West Main Street and Manalapan Avenue in Freehold Borough. IEP is a non-profit corporation of the State of New Jersey. The testimony at the hearing established that once municipal approvals were secured, plaintiffs Martin intended to lease the premises to IEP which in turn would enter into a contract with the Division of Youth and Family Services (hereafter

DYFS) to operate a group home for girls. The property in question is improved by a single-family dwelling situated on Lot 16 and a two-car garage on Lot 15. The group home to be operated by IEP and funded by DYFS provides for placement of young girls between the ages of thirteen and seventeen. The expected population of the home will be girls with emotional, social, physical and/or behavioral needs who do not require a more restrictive facility for their own protection or that of others. The Zoning Officer of Freehold Borough denied the application stating "a group home is not a permitted use in the B–2 zone. Also, this is an expansion of a non-conforming use in converting from a single-family home to multi-family dwelling unit."

The Zoning Board of Adjustment denied the plaintiffs' appeal from that ruling of the Zoning Officer. The Board found that the proposed use constituted an expansion of a non-conforming use in that IEP proposes a more "intense use" of the property, and further, the addition of staff members represents an expansion of the residential use. Further, the Board of Adjustment asserted that the attendant traffic and parking requirements expected to be generated by the group home would result in the residential lot being used as a parking lot.

The evidence at the hearing established that the premises had been used as a residence for more than thirty years. The residential uses predated the adoption of the 1969 Zoning Ordinance of the Borough of Freehold when Lot 16 was designated to be in the B–2 business zone while Lot 15 was designated to be in the R–7 residential zone. The dwelling in question is a large single family house which is suitably improved to accommodate the needs of its proposed occupants.

The plaintiffs request judgment overturning the decision of the Zoning Board of Adjustment. The role of the court, in reviewing the determinations of the Zoning Board of Adjustment, is limited and carefully prescribed. The court cannot merely substitute its own judgment for that of the Board. *See Pascack Ass'n Ltd. v. Mayor & Coun. Washington Tp.*, 74 *N.J.* 470, 487–

88, 379 *A.*2d 6 (1977) (judicial branch is not suited to the role of an ad hoc super zoning legislature). The Board's decision is presumed to be valid. *Kessler v. Bowker,* 174 *N.J.Super.* 478, 417 *A.*2d 34 (App.Div.1979); *Pagano v. Zoning Board of Adjustment,* 257 *N.J.Super.* 382, 608 *A.*2d 469 (Law Div.1992). Further, it must be presumed the Board's motives were valid and its determinations based on valid reasons. *Ibid.; Levitin v. Bd. of Adj. of Bloomfield,* 66 *N.J.Super.* 208, 214, 168 *A.*2d 686 (Law Div.1961). The court can overturn the Board's decision only if convinced the Board acted in an arbitrary, capricious or unreasonable fashion. *Medici v. BPR Co.,* 107 *N.J.,* 1, 15, 526 *A.*2d 109 (1987); *Kramer v. Sea Girt,* 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965). The burden of proof is on the property owner to establish that the Board acted improperly. *See Ring v. Mayor & Council of Borough of Rutherford,* 110 *N.J.Super.* 441, 266 *A.*2d 129 (App.Div.), *cert. den.* 401 *U.S.* 911, 91 *S.Ct.* 876, 27 *L.Ed.*2d 810 (1970).

▪ A resolution by a Board of Adjustment, when supported by sufficient credible evidence, must stand. *Urban Planning Bd.,* 238 *N.J.Super.* 105, 111, 569 *A.*2d 275 (App.Div.1990) (*citing Rowatti v. Gonchar,* 101 *N.J.* 46, 51, 500 *A.*2d 381 (1985)). However, a Board's determination of a legal issue "is entitled to no particular deference since the courts are equipped to resolve issues of law." *Ibid.* (*citing Cherney v. Zoning Bd. of Adj.,* 221 *N.J.Super.* 141, 145 n. 1, 534 *A.*2d 41 (App.Div.1987)). Since there is no dispute of material fact in the present controversy, summary judgment is appropriate. *R.* 4:69–2.

▪ It is well established that municipalities are creatures of the State. *See Becker v. Adams,* 37 *N.J.* 337, 181 *A.*2d 349 (1962). A municipality has only those powers delegated by the State. *Ibid.* When the provisions of a municipal ordinance conflict with State law, the State law controls. *See Dome Realty, Inc. v. Paterson,* 83 *N.J.* 212, 232, 416 *A.*2d 334 (1980). A municipality's power to zone is prescribed by the provisions of the Municipal Land Use Law. *N.J.S.A.* 40:55D–1 to –129.

In this regard *N.J.S.A.* 40:55D–66(c) provides:

No zoning ordinance shall, by any of its provisions ... discriminate between children or members of families by reason of the relationship by blood, marriage or adoption, and foster children placed with such families in a dwelling by the Division of Youth and Family Services and the Department of Institutions and Agencies ... and children placed pursuant to law in single-family dwellings known as group homes.

The statute goes on to indicate that the term "group home" is defined to mean a single-family home in which children are placed by the Department of Institutions and Agencies in accordance with the rules and regulations adopted by the department. The Department of Institutions and Agencies is now known as the Department of Human Services. *N.J.S.A.* 30:1A–1. DYFS is an agency under the ambit and control of the Department of Human Services. *N.J.S.A.* 30:4C–2. Pursuant to that statute, the term group home "means and includes any single-family dwelling used in the placement of 12 children or less pursuant to law recognized as a group home by the Department of Human Services in accordance with rules and regulations adopted by the Commissioner of Human Services" *N.J.S.A.* 30:4C–2(m).

The Department of Human Services, pursuant to statute, adopted rules and regulations. *N.J.A.C.* 10:128–1.1 to –10.25. Thus, as relevant to this controversy, a group home is designed to serve six to twelve children with emotional, physical and/or behavioral needs who do not require a more restrictive facility for their own protection or that of others. *N.J.A.C.* 10:128–1.2(b)(1). The home must provide board, lodging, care and treatment services on a twenty-four-hour basis in a homelike, community-based setting. *N.J.A.C.* 10:128–1.2(a). Only those facilities that comply with all lawful requirements of the Department of Human Services will be approved. *N.J.A.C.* 10:128–1.1. Indeed, no one may operate a group home for the purposes noted by the applicant in this case without first securing a certificate of approval from DYFS. *N.J.A.C.* 10:128–2.1(a). Only if the facility is in full compliance with the rules and regulations will a certificate of approval be granted. *N.J.A.C.* 10:128–2.2.

The evidence at the hearing clearly established that all necessary approvals have been or shall be secured by the plaintiff IEP. The court concludes that the use proposed at the location shall comply with all requirements governing group homes. However, the Board has taken the view that the use proposed constitutes an invalid expansion of a non-conforming use and, therefore, must be denied.

It is well-settled that non-conforming uses are not favored under the law. *Avalon Home & Land Owners Ass'n v. Borough of Avalon,* 111 *N.J.* 205, 543 *A.*2d 950 (1988); *Ranney v. Istituto Pontificio Delle Maestre,* 20 *N.J.* 189, 119 *A.*2d 142 (1955). Rather, since they do not comply with the requirements of the Zoning Ordinance, such uses shall be allowed to wither away. *Belleville v. Parrillo's Inc.,* 83 *N.J.* 309, 416 *A.*2d 388 (1980). In that respect the law, therefore, favors the earliest possible lawful end of a non-conforming use.

The proposed use may continue so long as the continuance is "substantially the same kind of use as that to which the premises were devoted at the time of the passage of the zoning ordinance." *Belleville, supra,* 83 *N.J.* at 316, 416 *A.*2d 388. A use may change where the change is "so negligible or insubstantial that it does not fairly warrant judicial ... interference." *Grundlehner v. Dangler,* 29 *N.J.* 256, 263, 148 *A.*2d 806 (1959). The use may not generally be expanded, *Avalon Home, supra,* 111 *N.J.* at 205, 543 *A.*2d 950; however, a mere increase in the intensity of use is not fatal to continuation of the non-conforming use. *See State v. Wagner,* 81 *N.J.Super.* 206, 195 *A.*2d 224 (Cty.Ct.1963) (holding "a mere increase in number of tenants ... not requiring any alteration or physical enlargement or change of the premises ... cannot be said to represent a substantial ... enlargement or extension of defendant's nonconforming use").

Clearly, when considering whether a prior non-conforming use will be unlawfully expanded, the Board must be guided by State law and may not discriminate as against a group home such as proposed by the plaintiff. At the hearing on the plaintiffs' motion

for summary judgment, the Board expanded its position to argue that the non-conforming status of the plaintiffs' application is graphically demonstrated by the staffing proposal. That is IEP intends to employ persons who will work throughout twenty-four hours per day. Assuming eight-hour shifts, the employees who finish will then go home to their own families and will not sleep in the premises in question. During the day, testimony established, there may be four staff members on duty, while at night only one staff member is on duty. The Board argues, with logic and reason, this arrangement clearly differs from the typical family whether or not related by blood, marriage or adoption.

While the Board's logic in this respect is irrefutable, the court finds, however, that the plaintiff IEP must comply with the staffing requirements mandated by DYFS. If IEP does not comply with the Department's rules and regulations, the certificate of approval will be withdrawn. *N.J.A.C.* 10:128–2.2. While noting that this arrangement conflicts with the typical understanding of family, the court does find that it complies with the requirements of *N.J.S.* 40:55D–66(c); therefore, the use is lawful so long as the staffing requirements comply with the administrative rules and regulations.

The Board's resolution speaks of the traffic and parking situation attendant to plaintiffs' use of the premises as a group home. The court finds from the testimony that the number of vehicles on a regular basis will be limited to staff personnel. In the absence of mass transit in the area, the court determines that the parking and traffic proposed by the applicant is normal and ancillary and stems from the plaintiffs' operation of a use allowed by law. In that sense it is not unlike the parking expected from a large family. Certainly no one would contend that pursuant to the zoning ordinance a small family would be permitted to occupy the premises in this situation, but that a large family would not be allowed to occupy the premises. *See State v. Wagner, supra,* 81 *N.J.Super.* at 212, 195 *A.*2d 224. The court finds, however, that

the Board's decision, were it to be upheld, would indeed have this impact.

The decision of the Board of Adjustment is reversed.