951 A.2d 1098

BLOCK 268 LLC, PLAINTIFF, v. CITY OF HOBOKEN RENT LEV-
ELING AND STABILIZATION BOARD, CITY OF HOBOKEN,
CAROLE MCLAUGHLIN, DIVISION CHIEF CITY OF HOBO-
KEN, DEPARTMENT OF HUMAN SERVICES, RENT LEVEL-
ING AND STABILIZATION, RAUL G. PEREZ, JR., AND ELIZA-
BETH L. PEREZ, DEFENDANTS.

Superior Court of New Jersey
Law Division

June 12, 2008—Decided August 28, 2006.

*Robert J. Gilson* for plaintiff (*Riker, Danzig, Scherer, Hyland, Perretti, LLP,* attorneys).

*John Horan* for defendant *City of Hoboken Rent Leveling and Stabilization Board* (*Schwartz, Simon, Edelstein, Celsu, Kessler, LLP,* attorneys).

*Christopher K. Harriott* for defendants *City of Hoboken and Department of Human Services* (*Florio & Kenny, LLP,* attorneys).

*David L. Ganz* for defendant *Division Chief, City of Hoboken* (*Ganz, Sivin, LLP,* attorneys).

*Ravinder Bhalla* for defendant Carole McLaughlin.

*Raul G. Perez, Jr., and Elizabeth L. Perez,* defendants pro se.

CURRAN, J.S.C.

This matter having been opened by the Plaintiff, Block 268 by way of a motion for partial summary judgment on Plaintiff's First, Second, and Third Causes of Action in Writs against the Defendants City of Hoboken Rent Leveling and Stabilization Board (the "Board"), City of Hoboken and Dept. of Human Services, Division Chief, City of Hoboken, Carole McLaughlin, and Raul & Elizabeth Perez (the "Perezes") this Court sets forth below its reasons for granting Plaintiff's motion for partial summary judgment.

This case presents an issue of first impression as to whether a residential property comprised of rental units, which is free from rent control pursuant to the Rent Control Exemption Act, *N.J.S.A.* 2A:42–84.1 to –84.6 ("the Rent Control Exemption Act" or the "Act"), loses its exemption status upon sale of the property or upon conversion of some of the property's units from apartments into condominiums. This Court, having reviewed the Act, finds that the language is clear and unambiguous; the Legislature has amended the Act since its 1987 effective date but has not addressed the issues of sale of the property nor conversion of certain units to condominiums. The Court finds, therefore, that the Board's actions at the May 10, 2006 hearing were arbitrary, capricious and unreasonable and exceeded the authority of the Board under the Act. This Court finds it appropriate, therefore, that Plaintiff Block 268's motion for partial summary judgment is granted.

## FACTS

Block 268 is a New Jersey limited liability corporation that owned residential buildings located at 1500 Hudson Street and 1500 Washington Street, Hoboken, New Jersey and currently owns condominium units in those buildings. The members of Block 268 are Hoboken L and I, LLC (a limited liability company related to Toll Brothers, Inc.), GMAC, and Apollo Real Estate Advisors LP. These buildings are also referred to as the Hudson Tea Buildings (the "Property").

From 1998 to 2004, BDLJ Associates, LLC ("BDLJ"), owned the Property. Starting in approximately 1998, BDLJ renovated those buildings and converted them from commercial and industrial facilities into a residential complex consisting of 525 residential units. When the renovation was completed in 2000, the residential units were all rental units.

### The Hudson Tea Buildings and The Exemption From Rent Control

In 2000, the Property obtained a thirty-year exemption from rent control, in accordance with the Rent Control Exemption Act,

that will not expire until 2030. In August 2004, BDLJ sold the Property to Toll Brothers, which, in turn, in October 2004, sold it to Plaintiff Block 268. After purchasing the Property, Block 268 decided to convert many of the rental apartments to condominiums. Block 268 utilized a "Non–Eviction Plan" for the conversion that allows the renters occupying the apartments in the Property immediately prior to the conversion to remain in occupancy following the conversion with the same or similar lease terms. Block 268 contemplated that, even with the conversion, units would continue to be rented. Currently, there are over 100 units in the Property being rented or offered for rent by Block 268. That number does not include units that are being rented by other owners of condominiums in the Property.

**The Perez Application**

On February 3, 2004, the Perezes entered into an eighteen-month lease agreement with BDLJ for apartment unit 1–I in the Property (the "Perez Lease"). The Perez Lease was to expire on August 31, 2005. Like all other tenants in the Property, BDLJ provided the Perezes with the "Notice To Prospective Tenants," thereby advising them that the Property was exempt from the provisions of Hoboken's Rent Control Ordinance (the "Ordinance"). The Perezes each signed, executed and acknowledged receipt of the Notice.

In addition, the Perez Lease contained the provision reflecting that their unit was exempt from the provisions of the Ordinance and would remain "exempt from any future rent control, rent stabilization or rent leveling ordinance of the City of Hoboken pursuant to *N.J.S.A.* 2A:42–84.1 *et. seq.* for a period of 30 years from completion of construction of the building."

The Perezes' initial rent was $2,825 per month. With concessions granted during the first lease term, the effective rent was $2,750. The Perez Lease expired in August 2005. By then the lease had been assigned to Block 268, so the renewal was with Block 268. The lease renewal sought to raise the rent to $3,050. On or about January 15, 2006, the Perezes, rather than renewing

their lease with Block 268, sent a Legal Rent Calculation Request to the Rent Control Board's Administrator, Ms. Carole McLaughlin, seeking to have a new rent calculated under the rent controls in the Ordinance.

By letter dated January 26, 2006, Ms. McLaughlin wrote back stating that, on the advice of counsel, the Board could not issue a legal rent calculation because the Perezes' unit in the Property was exempt from the Ordinance or any rent control regulation.

By letter dated March 21, 2006, the Perezes appealed Ms. McLaughlin's determination and filed a Request for the Legal Rent Calculation with the Board. The Perezes argued that "[u]pon closing of the sale of the [the Property from BDLJ] to Toll Brothers, Inc., the [rent control] exemption was void and the building immediately converted to rent control status." The Perezes also contended that the base rent they were paying (for purposes of conducting a legal rent calculation) was $2,521.

Block 268, through its attorneys, submitted a response to the Perezes' application. In its submission, Block 268 explained that the Perez unit, specifically, and the Property, generally, were exempt from the Ordinance by virtue of the Rent Control Exemption Act. Block 268's submission also provided legal explanations as to why the exemption was not lost through either the sale of the buildings or their conversion to condominiums. Finally, in response to a possible court finding that the Ordinance did apply, Block 268 also provided analysis of why they believe the Perezes' calculation of their "base rent" was incorrect.

### The Rent Control Board's May 10, 2006 Hearing

On May 10, 2006, the Board held a hearing on the Perezes' Request for a Legal Rent Calculation. Mr. Perez, representing himself, argued that the Property should be subject to rent control. Counsel for Block 268, John Randy Sawyer, Esq., responded that the Property was exempt from rent control for thirty years under the Act, and that the Act provides that no municipality can adopt any resolution or take any action to "limit, diminish,

alter, or impair any exemption." *N.J.S.A.* 2A:42–84.5. Accordingly, Block 268's attorney argued, the Property retained its exemption under the Act notwithstanding the sale of the buildings or its subsequent conversion to condominiums.

A Board member moved to "support" the Perezes' appeal. That motion was later clarified to confirm that the motion applied only to the specific Perez unit and was not a "blanket edict" covering other units in the Property. The Board voted unanimously in favor of the motion. However, Block 268 indicates in its moving papers that during the May 10 hearings the Board did not provide an explanation or basis for its decision.

Following its vote to support the Perezes' appeal, the Board addressed the rent calculation and, more specifically, the "base rent" for the Perezes. The Board did not hear substantive arguments specifically addressing the amount of the base rent. The Board determined that the "base rent" for the Perez Lease should be $2,750. Block 268 then stated its exceptions to the determination of the "base rent."

**The Rent Control Board's June 14, 2006 Meeting**

On June 14, 2006, the Board held a regularly scheduled meeting during which the Board voted on and approved a Resolution addressing the Perez appeal. Plaintiff Block 268 claims that after passing the Resolution, and after representatives of Block 268 had left the meeting, the Board made additional determinations concerning the Property. In particular, the Board determined that the Ordinance should apply to all units in the Property. Block 268 argues that based on the Board's actions, other tenants in the Property may seek reformulations of their rents in accordance with the Ordinance.

On June 22, 2006, Block 268 filed a Complaint in Lieu of a Prerogative Writs action seeking to vacate the Board's Resolution, the decision of May 10, 2006 as embodied in the Resolution, and the Board's actions taken on June 14, 2006 regarding the Proper-

ty. All parties were served with a Summons and Complaint by June 26, 2006.

## ARGUMENTS

### PLAINTIFF BLOCK 268'S ARGUMENTS:

Block 268 submits that the Court should grant partial summary judgment in favor of Block 268 and against the Board (1) declaring that the Property retain, until 2030, the rent control exemptions in the Act (First Count); (2) enjoining the Board from enforcing or implementing the Resolution or taking any action that applies the Ordinance to the Property or otherwise serves to "limit, diminish, alter or impair any exemption" under the Act (Second Count); and (3) vacating the Resolution and the May 10, 2006 decisions as embodied in the Resolution, and any other action taken by the Board with respect to the Property (Third Count). In the alternative and only if the Court rules that the exemptions do not apply to the Property, Block 268 asks for a recalculation of the Perezes' rent amount under the Ordinance. The Court's grant of partial summary judgment in favor of Block 268 on this motion will have the effect of resolving all Counts of the Complaint and fully resolve this matter. Two of the remaining Counts of the Complaint seek the same or similar relief on other grounds, including Equal Protection and Due Process (Fourth and Fifth Counts).

Block 268 contends that this Court should review the Board's decision under a de novo standard. *See Wyzykowski v. Rizas,* 132 *N.J.* 509, 519, 626 *A.*2d 406 (1993) (finding that a municipal board's interpretation of a statute or ordinance presents a legal issue for a court to decide on a de novo standard of review). Because the Board rendered a determination on a question of law, Block 268 argues that the Court need not defer to that decision. *Winters v. Twp. of Voorhees,* 320 *N.J.Super.* 150, 153, 726 *A.*2d 1013 (Law Div.1998).

Block 268's principal argument is that the Property is exempt from the Ordinance until 2030 in that the statute's plain language

is clear and unambiguous in specifying that "multiple dwellings built *after 1987* are exempt from rent control for a period of thirty years from completion of construction or for the period of time over which an initial mortgage loan was to be amortized." The Act provides, in relevant part:

2A:42–84.2. Applicability of municipal rent control ordinances

a. In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance, other than under the authority of P.L.1966, c. 168 (C.2A:42–74 et seq.), those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to multiple dwellings constructed after the effective date of this act, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.

b. In the event that there is no initial mortgage financing, the period of exemption from a rent control or rent leveling ordinance shall be 30 years from the completion of construction.

*N.J.S.A.* 2A:42–84.1(e) defines "multiple dwelling" as: "Multiple dwelling means any building or structure and land appurtenant thereto containing four or more dwelling units, other than dwelling units constructed for occupation by senior citizens, rented or offered for rent to four or more tenants or family units."

Here, Plaintiff submits that when BDLJ applied for exemption for the Property in 2000, its application was successful because the Property qualified as "multiple dwellings" constructed "after 1987" as contemplated by the Act. Block 268 argues that nothing in the Act, in its legislative history, or statutory construction, allows the Board to cut short the exemption.

Plaintiff argues that when reviewing a statute, the Court's "overriding goal must be to determine the Legislature's intent." *State Dep't. of Law & Pub. Safety v. Gonzalez,* 142 *N.J.* 618, 627, 667 *A.*2d 684 (1995). That intent, Block 268 argues, is clear when the Act states that, "[n]o municipality, county or other political subdivision of the State or agency or instrumentality thereof" can "limit, diminish, alter, or impair" the exemption. *N.J.S.A.* 2A:42–84.5.

Plaintiff expounds further on the issue of legislative intent, arguing that the Legislature was "expansive in its granting of exemptions" and that, in drafting the Act, the legislators were focused on the marketability of the dwellings. Specifically, Block 268 states, the Legislature's purpose behind the Act was to maintain, "the marketability of those multiple dwellings [receiving an exemption] ..., to the greatest extent economically possible" and "maintain in this respect a predictable environment within which the financing, construction and marketing of new multiple dwellings can occur." Plaintiff thus concludes that the conversion of rental units to condominiums (both of which are "multiple dwellings") increases marketability and consequently any municipal body's elimination of the exemption in such a case would be directly contrary to the legislative intent.

In countering Defendants' positions, Plaintiff maintains that neither the sale nor conversion to condominiums can serve as a basis to limit, diminish, alter or impair the statutory exemption. First, Plaintiff contends that the exemption expires neither as a result of the sale of the buildings nor the payoff of the original mortgage. Second, Plaintiff argues that the rent control exemption status is not lost with the sale because its status runs with the land regardless of the owner. Block 268 notes that, during the May 10, 2006 hearing, even one of the Board's own attorneys admitted that, "since the mortgage was a 30–year mortgage, in my opinion, it makes no difference whether the building was sold or not sold, it's still a 30–year exemption that runs with that particular building," and "[t]he State statute could have said that it was applicable only to the original owner [but] it did not do that."

Although the Board limited its Resolution to the Perez unit, the Board takes the position that the rent control Ordinance now applies to all units of the Property. In response, Block 268 argues that because other tenants of the Property may now seek recalculations of their rents, Ms. McLaughlin and the Board "should have this Court's guidance before deciding any further applications or risk making a number of other invalid and illegal determinations."

Block 268 predicts that the end result of the Board's determination would be confusion and uncertainty, for both the tenants and Block 268, which could impact housing decisions, lease renewals, sales of condominiums, improvements, and other considerations relating to these buildings and numerous tenants and owners.

Block 268 also argues the Board's decision should be vacated because once the Court finds that the Act applies, the State law preempts the Board's action. Specifically, once the Court finds that the Property retains the exemption under the Act, the Act preempts the application of the Ordinance to the Property. It is fundamental that "when the provisions of a municipal ordinance conflict with State law, the State law controls." *Inst. for Evaluation & Planning, Inc. v. Bd. of Adjustment,* 270 *N.J.Super.* 396, 400, 637 *A.*2d 235 (Law Div.1993).

Block 268 further contends that the Board's action is logically inconsistent as it treats the Property as rental units under the Ordinance but not for purposes of the Act. Under its terms, the Ordinance applies to all "dwelling units as defined in § 155–1 . . ." with certain exemptions not here relevant. Under Section 155–1, "dwelling" is defined as "any building or structure or trailer or land used as a trailer park rented or offered for rent to one or more tenants or family units." The Ordinance then provides that rents between landlord and tenants "in housing space in dwellings to which this chapter is applicable" shall be determined by the provisions of the Ordinance.

Block 268's brief provides a comparison of the definition of dwellings under the Ordinance and multiple dwellings under the Act and explains that the definitions are quite similar:

| N.J.S.A. 2A:42-84.1—"multiple dwelling": | Ordinance § 155-1—"dwelling" |
| --- | --- |
| "any building or structure and land appurtenant thereto containing four or more dwelling units, other than dwelling units constructed for occupation by senior citizens, rented or offered for rent to four or more tenants or family units." | "any building or structure or trailer or land used as a trailer park rented or offered for rent to one (1) or more tenants or family units." |

The main difference between the Act and the Ordinance is that the Act requires that a building contain at least four units to be rented (or offered for rent) and the Ordinance requires that a building have only one unit to be rented (or offered for rent). It is undisputed that there are at least four units being rented at the Property. Indeed, there are over 100 pre-conversion tenants still remaining as tenants at the Property, and many will undoubtedly remain so for years.

Block 268 argues that in light of the similarities in the definitions the fallacy of the Board's reasoning becomes evident. It is Block 268's position that the Property is a multiple dwelling, even when some units are used as condominiums, and the Property is, therefore, entitled to maintain its exemptions. Block 268 states, "The Board apparently argues that [the Property is] no longer multiple dwellings because they are now condominiums, and that they should not get the exemption." Block 268 concludes that "the Board cannot have it both ways" and that if the Properties are "dwellings" under the Ordinance, they must also be "multiple dwellings" under the Act. Lastly, Block 268 argues, because state law preempts a local ordinance, the Properties should retain their exemption.

In sum, Block 268 argues that the Board's decision is arbitrary, capricious, and unreasonable, and should be vacated. Whether condominiums or rental apartments, Block 268 contends, the exemptions under the Act still apply and will apply until 2030.

**DEFENDANT BOARD'S ARGUMENTS:**

The Board argues that the Act's exemption does not run with the land and that upon the conversion of the Property from rental units into condominiums, Block 268 relinquished its entitlement to the Act's exemption from rent control.

The Board argues that because the language of the statute does not specifically address exemption status in the event of a subsequent sale or conversion of the rental units an examination of the legislative intent is critical. Here, the Board argues, the Legisla-

ture's intent is to protect the initial investment of new construction. *See N.J.S.A.* 2A:42–84.6 and *N.J.S.A.* 2A:42–84.5(b). According to the Board, "This is the reason why *N.J.S.A.* 2A:42–84.2 references the 'period of amortization of any initial mortgage' as the factor that determines the length of the Act's exemption." The reference to the initial mortgage in the Act's exemption protects against the situation wherein an owner/developer constructs new rental housing, incurs a mortgage debt that reflects fair market value of the new construction, and subsequently suffers a significant depreciation in the property's value once rent controls are triggered. Thus, the Board argues, if the exemption was intended to continue after the conversion, the Legislature would have included this pertinent language into the Act.

The Board contends that in this case the above-stated intent has been satisfied. The exemption granted to the Property in 2000 eliminated concerns over rent control and promoted the Property's conversion from industrial/commercial facilities into residential apartment units. Furthermore, the initial mortgage incurred by BDLJ was satisfied upon the sale of the Property to Toll Brothers. The Board concludes that after Block 268 converted the Property into condominiums, the concern for protecting the continuity of the initial mortgage's marketability became moot because the legislative intent had been satisfied (i.e., the Property's conversion into condominiums significantly increased the Property's value).

The Board further argues that permitting Block 268 to benefit from the exemption will result in an "illogical windfall for owners of newly constructed rental units." Defendant Board notes that Block 268 has stated that the exemption attaches to the Property until 2030 (i.e., for a maximum exemption duration of thirty years) to protect the continuity of the Property's marketability. The Board counters that Block 268's position "does not explain the reason why the exemption continues at a maximum of thirty years instead of continuing indefinitely." Specifically, the Board explains that Block 268's approach would result in the severe

depreciation of the Property's value in 2028 with the threat of rent controls looming right around the corner. Thus, the Board argues, the Act's "true intent" is to protect the initial investment of any *new* construction. That protection is no longer needed, argues the Board, because Block 268's conversion of the Property to condominiums effectively removes the Property from being categorized as "new construction" and its value has "presumably skyrocketed."

The Board argues that should the Court adopt Block 268's logic, calculating developers seeking to reap windfall profits in Hoboken will proceed to develop condominiums under the guise that they are seeking to erect rental units. The developers, whose true intent all along is for the units to be condominiums, will initially deem the units as apartments in order to circumvent rent control and obtain an exemption under the Act. Once the developer has successfully exploited the system and obtained the exemption, the apartments will be converted into condominiums and he will reap the financial benefit of a rent control exemption for thirty years. The Board contends that this approach amounts to a "loophole" that is completely inconsistent with the Act's intent of promoting construction and protecting the initial mortgage through protecting the Property's marketability. Had the Legislature envisioned this loophole, the Board argues, it would have protected against it and provided that the exemption is lost upon the subsequent conversion of the rental property to condominiums. The Board concludes that Block 268 is "attempting to use this loophole proactively to obtain a windfall."

Lastly, the Board addresses the concern that the removal of the exemption will result in developers and landlords avoiding construction in the City of Hoboken and thereby disadvantage the area. The Board argues that this concern is misplaced because the City of Hoboken is "an affluent community" that benefits from its "close proximity to New York City." Consequently, developers and landlords "will always profit from Hoboken's attractiveness,

regardless of whether apartments that are converted into condominiums are subject to the City's Ordinance or are exempt."

**DEFENDANT MCLAUGHLIN'S ARGUMENTS:**

Defendant McLaughlin argues that Block 268's motion for summary judgment should be dismissed because it is premature under the filing guidelines of *Rule* 4:46-1. Defendant's counsel accurately states that the Rule provides that a party may file a motion for summary judgment at any time any time after thirty-five days from the service of the initial pleading. Defendant argues that, since she had just received the complaint on June 22, 2006, Block 268's July 5, 2006 motion for summary judgment was premature. Defendant McLaughlin thus moves for dismissal.

**DEFENDANTS PEREZES' ARGUMENTS:**

The Perezes, like the other Co–Defendants in this matter, maintain the argument that the Property lost its exemption status when (1) the buildings were sold (i.e., changed owners); and/or (2) Block 268 converted the units to condominiums.

The Perezes note in their certification that the "plain language and purpose of the Rent Control Exemption Act is clear—[to] provide an incentive for expansion to the supply of rental housing in New Jersey." The Perezes argue that Block 268 should not be allowed an exemption from rent control because Block 268's conversion of the Property from rental units into condominium units decreases the supply of rental housing and thus goes against the policy behind the Act.

Additionally, the Perezes argue that Block 268 has not complied with the Ordinance, nor has Block 268 demonstrated that it is exempt from it. Specifically, the Perezes point to the disclosure in the record that an authorized representative of Block 268 testified at the hearing below that the initial mortgage on the building in issue was paid off in full some time ago and thus, the Perezes argue, this precludes Block 268 from having any basis for its exemption from rent control.

## PLAINTIFF BLOCK 268'S REPLY:

Block 268 argues that the Board is incorrect in its assertion that because the Act's plain language gives no guidance for the specific situation at bar it is necessary to examine the legislative intent. Block 268 replies that the Act's language does in fact address the current situation by providing that "multiple dwellings" built after 1987 are exempt from rent control for a period of thirty years from completion of construction or for a period of time over which an initial mortgage loan was to be amortized, whichever is shorter. *See N.J.S.A.* 2A:42–84.2. Block 268 further contends that nothing in that provision states or even suggests that a change in ownership, whether by sale or conversion, cuts off this period of exemption.

Plaintiff Block 268 argues that the phrase "multiple dwellings," by its very terms, encompasses various types of buildings and thus Plaintiff's conversion of some of the Property's units from rental units into condominium units has no effect on their classification as "multiple dwellings."

Plaintiff further argues that the intent of the Act is consistent with preserving the Property's exemption and that this intent is broader than merely protecting the "initial investment of any new construction," as the Board suggests. Rather, Block 268 argues, the Act's stated intent is to "encourage the marketability of buildings." To support this statement, Plaintiff contends that the Legislature was well aware that apartment buildings could be converted to condominiums, and that such conversions would maintain the marketability of multiple dwellings " 'to the greatest extent economically possible. . . .' " *See N.J.S.A.* 2A:42–84.6.

Block 268 further argues that the Legislature preempted the field of rent control for buildings like the Property because the Act emphasizes that municipalities, municipal boards, or other local entities are prohibited from interfering with the exemptions granted by the Act.

In response to Defendant McLaughlin's argument that Block 268's motion for summary judgment is untimely, Plaintiff contends that this argument is "without merit and is moot" because *before* Block 268 served the motion, it consulted with counsel for the Board and McLaughlin and they consented to the briefing schedule.

## RELEVANT RULES OF LAW:

**N.J.S.A. 2A:42–84.2.** Applicability of municipal rent control ordinances

a. In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance, other than under the authority of P.L.1966, c. 168 (*C.2A:42–74* et seq.), those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to multiple dwellings constructed after the effective date of this act, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.

b. In the event that there is no initial mortgage financing, the period of exemption from a rent control or rent leveling ordinance shall be 30 years from the completion of construction.

**N.J.S.A. 2A:42–84.5.** Exemptions from rent control, leveling, stabilization; legislative intent

a. It is the intent of P.L.1987, c. 153 (*C.2A:42–84.1* et seq.), that the exemption from rent control or rent leveling ordinances afforded under P.L.1987, c. 153 (*C.2A:42–84.1* et seq.) shall apply to any form of rent control, rent leveling or rent stabilization, whether adopted now or in the future, and by whatever name or title adopted, which would limit in any manner the periodic or regular increases in base rentals of dwelling units of multiple dwellings constructed after the effective date of P.L.1987, c. 153 (*C.2A:42–84.1* et seq.). No municipality, county or other political subdivision of the State, or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation, or take any other action, to limit, diminish, alter or impair any exemption afforded pursuant to P.L.1987, c. 153 (*C.2A:42–84.1* et seq.).

b. The Legislature deems it to be necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey. In an effort to promote this new construction, the Legislature enacted P.L.1987, c. 153 (*C.2A:42–84.1* et seq.), the purpose of which was to exempt new construction of rental multiple dwelling units from municipal rent control so that the municipal rent control or rent leveling ordinances would not deter the new construction. Although this legislation was initially made effective only for a temporary five-year period, it was expanded for a second five-year period by P.L.1992, c. 206 until 1997, and then in that year made permanent by P.L.1997, c. 56. At the time P.L.1987, c. 153 (*C.2A:42–84.1* et seq.) was introduced, the uniform

method of financing construction of new apartments was through project-based mortgage loans. There was little, if any, new construction financed in any other way. Recently, however, there has been increased utilization of Real Estate Investment Trusts (REITs) and other public companies which could potentially be an important new source of construction of rental housing in New Jersey. These entities generally do not utilize project-based mortgages but instead obtain comprehensive financing not secured by individual mortgages as a more efficient and lower cost means of financing new construction. There has been confusion as to whether new construction undertaken by REITs and other such entities would be exempted from municipal rent control under the terms of section 2 of P.L.1987, c. 153 (*C.2A:42–84.2* ) when there is no initial mortgage financing. To eliminate any confusion and to facilitate the construction of new rental units for which there is no initial mortgage financing, section 1 of P.L.1999, c. 291 amends section 2 of P.L.1987, c. 153 (*C.2A:42–84.2* ) to add a subsection b. to that section in order to clarify the Legislature's intent of providing an exemption from municipal rent control ordinances, except those adopted under the authority of P.L.1966, c. 168 (*C.2A:42–74* et seq.), by specifying that the period of time for exemption from rent control in such instances shall be 30 years following completion of construction.

**N.J.S.A. 2A:42–84.6.** Construction of multiple dwellings encouraged

It is the intent of this act to establish an experimental program whereby the construction of multiple dwellings in this State shall be encouraged, and the marketability of those multiple dwellings shall be maintained, to the greatest extent economically possible, through the exemption by law of newly constructed multiple dwellings from rent control, rent leveling and rent stabilization ordinances. The Legislature, therefore, declares it to be public policy of this State that, within the limitations imposed by this act, the exemptions granted under this act shall not be limited, diminished, altered, or impaired during the period of exemption afforded, in order to maintain in this respect a predictable environment within which the financing, construction and marketing of new multiple dwellings can occur, and to permit the Legislature to evaluate the results of the experimental program after a specified period of time during which the program shall have been given a fair opportunity for success, and during which the coherence of the statutory scheme establishing the program has been preserved.

## ANALYSIS & CONCLUSION:

■ As a preliminary matter, it is important to note that in examining the Board's May 10, 2006 resolution, this Court finds that its interpretation of the Act involves questions of law to be reviewed de novo by this Court. *See In re Pub. Serv. Elec. & Gas Co.*, 35 *N.J.* 358, 376, 173 *A.*2d 233 (1961). "The interpretation of an ordinance is purely a legal matter as to which an administrative agency has no peculiar skill superior to the courts." *Jantausch v.*

*Borough of Verona,* 41 *N.J.Super.* 89, 96, 124 *A.*2d 14 (Law Div.1956), *aff'd,* 24 *N.J.* 326, 131 *A.*2d 881 (1957).

■ This Court finds that the Act is clear in stating that, "[n]o municipality, county or other political subdivision of the State or agency or instrumentality thereof" can "limit, diminish, alter, or impair" the rent control exemption granted by the Act. *N.J.S.A.* 2A:42–84.5. The Act's language is broad and does not provide a list of exceptions to this exemption. Furthermore, since the Act's inception in 1987, the Legislature has revisited the Act by making specific revisions in 1992 (expanding the initial 5–year duration of the Act for an additional five years), 1997 (making the Act permanent), and 1999 (regarding the Act's application to construction financed via REITs). Notably, in none of those amendments did the Legislature carve out exceptions to the exemption when it clearly had plenty of opportunities to do so.

Through the Act, the Legislature encouraged construction of multiple dwellings, declaring it public policy that, "the exemptions granted under this act shall not be limited, diminished, altered, or impaired during the period of exemption . . . in order to maintain in this respect a predictable environment within which the financing, construction and marketing of new multiple dwellings can occur." *N.J.S.A.* 2A:42–84.6. This Court finds that the Legislature's ratification of the Act effectively preempts the Board's action to restrict the exemption in any way.

The Legislature, in the future, may indeed find it necessary to amend the statute to specifically address the condominium conversion issues raised within the City of Hoboken at present. At that time the Legislature might take a number of plausible courses in dealing with the issue. For instance, the Legislature could take another look at the Act and decide that rent control applies only to the rental units in hybrid rental/condominium buildings. Alternatively, the Legislature may determine that both rental units and condominiums in the hybrid buildings shall be rent controlled (or both exempted from rent control). As a supplement to these determinations, or perhaps as an independent course altogether,

the Legislature could also tailor the exemption by geographic area depending on economic needs within specific areas (i.e., enterprise zones or "blighted" areas). The Legislature could allow an exemption only to areas that are less economically prosperous so as to provide incentive for builders to build there. The Legislature could also decide to leave the statute untouched but clarify that upon conversion to condominiums, the "marketability" issue has been satisfied thus, pursuant to the Act's current wording, neither rental units nor condominiums in the building get the exemption. Whether any of these amendments to the statute occur, or whether the Legislature opts for another route not envisioned here, is for the State Senate and General Assembly to decide, not the Courts.

In reviewing the Act's current language this Court finds that the language is clear and unambiguous and that the statute requires that the Property be exempt from rent control. The Court therefore finds that it is appropriate to grant Plaintiff Block 268's motion for partial summary judgment.