**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4079-17T1

JSM AT EDISON TERRACE,
LLC,

      Plaintiff-Appellant,

v.

EDISON FAIR RENTAL
HOUSING BOARD,

      Defendant-Respondent,

and

PHYLLIS HALL,

      Defendant.

_____

Submitted January 25, 2019 – Decided April 5, 2019

Before Judges Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5810-17.

The Weingarten Law Firm, LLC, attorneys for appellant (Richard D. Wilkinson, of counsel and on the briefs).

Mc Manimon, Scotland & Baumann, LLC, attorneys for respondent (Kevin P. Mc Manimon and Thaddeus J. Del Guercio, III, on the brief).

PER CURIAM

Plaintiff JSM at Edison Terrace, LLC (JSM) appeals from an April 2, 2018 judgment of the Law Division dismissing its complaint with prejudice. We affirm.

JSM runs a mobile-home park in Edison. Defendant Phyllis Hall has been plaintiff's tenant since 1993. For twenty-four years, JSM did not bill nor expressly charge defendant or other tenants for their water consumption. In 2009, JSM sent Hall a one-year lease to renew her tenancy. That lease added language in paragraph nine (excerpted below) reserving the right to install water sub-meters and separately charge for water and sewer service, subject to local rent control ordinances. In 2017, JSM raised rent by five percent, the maximum permitted by local ordinance, and installed water sub-meters to account for each tenant's individual water consumption. Soon after, Hall received water bills of twenty-five and fifteen dollars, respectively from the water provider. The bills included usage and service fees.

Hall's 2009 and 2017 leases with JSM included the following provisions:

> 8. UTILITIES. Subject to local rent control regulations, at the inception of Residency, you shall pay

2

for all utilities servicing the Site. Owner is not contractually obligated to pay for any utilities provided to the Site during Residency. . . . Utility charges improperly assessed to Owner subsequent to your taking occupancy shall be considered additional rent.

9. WATER/SEWER SERVICE. Subject to local rent control regulations, you are responsible for the maintenance of your water and sewer lines from the Owner's connection to your Mobile Home, and in the event Owner elects to convert your unit to direct billing to the relevant water/sewer authority, you will then be responsible for payment of water and/or sewer service.

On April 4, 2017, Hall filed a complaint with the Edison Township Fair Rental Housing Board (Board) alleging JSM's installation of water sub-meters was a reduction in services in violation § 17-4.11 of the Edison Township Housing Code (Code).[1] The Board held a hearing where Hall and a JSM employee, Greg Bohn, the sub-meter installer, testified. Hall testified that since she began her tenancy in 1993, water and sewer services were provided by JSM at no extra charge. When Bohn was asked why tenants were never charged for water before installation of the sub-meters, he replied "I do not know. I am not involved in that." There was no testimony or document explaining how (or if)

---

[1] Section 17-4.11 of the Code states: "Landlords shall maintain the same standards of service and maintenance of all real and personal property and equipment in and around the housing spaces and dwellings in the same manner as was provided on the date of adoption of this section."

JSM factored water charges into the rent or how rent was calculated generally. In its written submission to the Board, JSM argued it has never been obligated to pay for tenants' utilities and the 2009 lease specifically identified water service as a utility, not a service.

Exercising powers under § 17-4.10 of the Code to promulgate rules to enforce the Code, hold hearings and record findings, and require landlords to adjust rent and reimburse tenants, the Board found JSM's installation of water sub-meters was effectively a method to pass through the cost of water to tenants. The Board found this constituted a reduction in services, in violation of § 17-4.11, because JSM now required tenants to pay for a service previously provided to them. The Board ordered JSM to reimburse Hall and provide her water at no charge.

JSM filed a complaint in lieu of a prerogative writ in the Law Division. On April 2, 2018, the judge conducted a trial de novo on the record and heard arguments from JSM and the Board.[2] JSM argued its lease always required tenants to pay for their own utilities and JSM reserved the right to switch to direct billing, but JSM offered no explanation as to how Hall paid for water for

---

[2] Hall did not appear before the trial court but was joined as a necessary party. She did not enter an appearance or file a brief in this appeal.

the previous twenty-four years.  The Board argued JSM imposed a back-door rent increase by requiring tenants to pay for a service previously provided without offering a corresponding rent decrease and contended there was no plain-meaning difference between the terms "service" and "utility."  Therefore, it was the Board's position that § 17-4.11's use of "service" includes utilities like water, gas, and electricity.

The judge reviewed the matter de novo and interpreted the term "base rent"[3] to mean a charge for a space in the trailer park that provided JSM with a reasonable return on its investment in the business, including the cost of services provided to the tenants, such as street lighting, street cleaning and garbage collection.  Therefore, the judge inferred JSM calculated the cost of water in the base rent it charged to tenants, which meant Hall, and other tenants, were already paying for water before the sub-meters were installed.

---

[3]  "Base rent," pursuant to the Code, "means for the first twelve (12) months after the effective date of this section, the present monthly rental. . . .  Thereafter, the 'base rent' shall mean the base rent for the prior twelve (12) month period, excluding hardship surcharge and improvement surcharge." § 17-4.1.  The Code prevents landlords from imposing an annual rent increase of more than five percent above the previous year's base rent without seeking the Board's approval.  § 17-4.2(b).

A-4079-17T1

The judge also construed the terms "service" and "utility" as synonymous because paragraph nine of JSM's lease used the term "water service." Thus, the judge held § 17-4.2(c)[4] prevented JSM from enacting direct water billing. He also concluded JSM violated § 17-4.11 by directly billing for water because it was a charge for a service already provided.[5] This appeal followed.

Generally, we apply the substantial evidence rule to prerogative writ matters tried on the record. See, e.g., Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013). We presume an agency's decision is valid and is only reversible if arbitrary, capricious or unreasonable. Charlie Brown of Chatham, Inc. v. Bd. of Adjustment, 202 N.J. Super. 312, 321 (App. Div. 1985). Rent control boards, like adjustment and zoning boards, exercise quasi-judicial power. Roth v. Rutherford Rent Bd., 239 N.J. Super. 378, 391 (Law Div. 1989). In determining whether an agency's decision is a quasi-judicial act, the key question is "'whether the fact finding involves a certain person or persons whose rights will be directly

---

[4] Section 17-4.2(c)(1) provides "[n]o landlord shall charge to any tenant a separate charge or fee for any privilege, service or facility normally connected with the use or occupancy of a dwelling."

[5] The trial judge's written order only referred to § 17-4.11 as the basis for its decision, not § 17-4.2(c). We do not consider that omission fatal to our analysis.

affected.'" Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 136 (2001) (quoting Cunningham v. Dep't of Civil Serv., 69 N.J. 13, 22 (1975)).

We review the interpretation of an ordinance as "'purely a legal matter as to which an administrative agency has no peculiar skill superior to the courts.'" Block 268 LLC v. City of Hoboken Rent Leveling & Stabilization Bd., 401 N.J. Super. 544, 560-61 (Law Div. 2006) (quoting Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96 (Law Div. 1956)); see also Atl. Container, Inc. v. Twp. of Eagleswood Planning Bd., 321 N.J. Super. 261, 278 (App. Div. 1999) ("Of course, interpretation of an ordinance is essentially a legal issue."). Therefore, we review interpretation of the ordinance de novo. Hence, we ask two questions: does the record support the Board's underlying decision and did the Law Division judge correctly interpret the Code? We answer both questions in the affirmative.

JSM argues the trial judge's order, not the Board's, is the only order we should review and that the trial judge impermissibly found JSM included water service in base rent without support in the record. We disagree.

Hall alleged in her complaint that the water charge, together with the twenty-six dollar increase in her base rent for 2017-2018, amounted to a rent increase of more than the five percent per year allowed by the Code. JSM argues

7

§ 17-4.11 only deals with a property owner's general upkeep of its property, necessarily excludes utilities, and has nothing to do with base rent. The lease did not define base rent and the Code's definition is not particularly instructive for our discussion. A review of the record does not definitively establish whether JSM captured the cost of water in the base rent or whether JSM assumed the cost itself, essentially providing water free of charge. We do not consider that distinction material for purposes of this appeal. However, JSM concedes it never charged Hall for water usage prior to installation of the sub-meters, yet it still imposed an additional five percent rent increase.

We agree with the Board that, in effect, JSM's installation of water sub-meters was a method by which to pass through the cost of water to the tenants without offering a corresponding rent decrease. Hall's base rent necessarily included a water charge. A profit-seeking landlord, like JSM, certainly factored in the cost of water when calculating the rent to charge to tenants. Common sense offers no other explanation for the twenty-four years Hall was not charged.

Whether water is a "utility" or a "service" under the Code is irrelevant to understand what happened here. JSM tenants, like Hall, had come to expect that by paying their rent each month they would, in return, receive water service. By shifting the cost of water onto the tenants without decreasing its rent charge,

8

JSM received a windfall equal to what it costed to provide water before installation of the sub-meters. As a result, JSM disguised an unapproved rent increase of more than five percent in the form of direct water billing. Therefore, we affirm the Board's decision, albeit for a different reason.

We do not address plaintiff's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4079-17T1